123 T.C. No. 2

UNITED STATES TAX COURT

ESTATE OF ALGERINE ALLEN SMITH, DECEASED, JAMES ALLEN SMITH,
EXECUTOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19200-94.                    Filed July 13, 2004.

On Jan. 24, 2002, the Court entered a decision
that there was an overpayment of $238,847.24 regarding
E's estate tax liability, which amount was paid after
the mailing of the notice of deficiency.  That decision
is now final.  R issued refunds to E which were less
than the overpayment amount and interest thereon.  R
alleges that the refund was less than the $238,847.24
overpayment and interest thereon because, after our
decision became final, and pursuant to sec. 6402(a),
I.R.C., he applied $85,336.83 of the $238,847.24
overpayment to assessed but unpaid interest that had
accrued on E's estate tax deficiency prior to the date
of payment (underpayment interest).  E filed a motion
to enforce our overpayment determination pursuant to
sec. 6512(b)(2), I.R.C., and Rule 260, Tax Court Rules
of Practice and Procedure.

Held:  An overpayment means any payment of tax in
excess of the tax which is properly due.  For purposes
of determining the amount of an overpayment, the term
"tax" includes any underpayment interest due thereon.

Thus, an overpayment by definition is the amount by which payments exceed the tax and interest for the period of underpayment.

Held, further, the amount of the refund should not have been reduced for underpayment interest because that interest was part of the tax amount that was required to be considered in determining the amount of the overpayment. Our final decision that there was a $238,847.24 overpayment precludes any remaining unpaid underpayment interest to which R could apply the overpayment. Held, further, sec. 6512(b)(4), I.R.C., which provides that this Court does not have jurisdiction to restrain or review the Commissioner's application of an overpayment pursuant to sec. 6402, I.R.C., to outstanding tax liabilities of the taxpayer who overpaid, does not apply where our final decision in the same case precludes the existence of the liabilities to which the Commissioner applied the overpayment. E is entitled to a refund of the $238,847.24 overpayment amount, plus interest thereon, less any refunds already made with respect to the overpayment.

Harold A. Chamberlain and Michael C. Riddle, for petitioner.

R. Scott Shieldes, for respondent.

OPINION

RUWE, Judge: This matter is before the Court pursuant to the estate's Motion for Proceeding To Enforce Overpayment Determination pursuant to Rule 260.[1] Our jurisdiction to grant such relief is conferred by section 6512(b)(2).

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code.

## Background

In 1994, respondent issued a notice of deficiency determining an estate tax deficiency of $663,785 and an accuracy-related penalty under section 6662(a) of $132,785. The estate filed its petition with this Court seeking redetermination of the deficiency. In March 1998, after our first opinion and decision that there was a deficiency of $564,429.87, the estate paid $646,325.76 with respect to its estate tax. Our first decision was appealed and never became final. After many years of litigation,[2] we entered a decision on January 24, 2002, that is now final. In our decision, we determined that the estate was due an "overpayment in estate tax in the amount of $238,847.24, which amount was paid after the mailing of the notice of deficiency".

### Pertinent Dates and Information

Decedent died on November 16, 1990. The estate filed the estate tax return on July 12, 1991, and included with it a payment of $60,164.54, which was the tax liability reported on the return. On March 31, 1998, after our initial decision that there was a deficiency in the amount of $564,429.87, the estate

---

[2]See Estate of Smith v. Commissioner, 108 T.C. 412 (1997); Estate of Smith v. Commissioner, 110 T.C. 12 (1998); Estate of Smith v. Commissioner, 198 F.3d 515, 526 (5th Cir. 1999); Estate of Smith v. Commissioner, 115 T.C. 342, 348-49 (2000); Estate of Smith v. Commissioner, T.C. Memo. 2001-303; Estate of Smith v. Commissioner, 54 Fed. Appx. 413 (5th Cir. 2002).

remitted a $646,325.76 payment (advance payment). Respondent also credited the estate's estate tax liability with a 1992 income tax overpayment of $63,052. On May 12, 1998, respondent made a "quick assessment" of estate tax of $564,429.87 and deficiency interest thereon of $410,848.76.

On January 18, 2002, after our most recent opinion in this case, respondent filed respondent's computation for entry of decision (respondent's computation) along with a proposed decision. Counsel for both parties acknowledged that respondent's computation was in accordance with our opinion in Estate of Smith v. Commissioner, T.C. Memo. 2001-303, affd. 54 Fed. Appx. 413 (5th Cir. 2002). Based on that computation, the parties stipulated that we should enter a decision "that there is an overpayment in estate tax in the amount of $238,847.24, which amount was paid after the mailing of the notice of deficiency".[3]

---

[3]The agreed computations were prepared pursuant to Rule 155(a), which states:

> Where the Court has filed or stated its opinion determining the issues in a case, it may withhold entry of its decision for the purpose of permitting the parties to submit computations pursuant to the Court's determination of the issues, showing the correct amount of the deficiency, liability, or overpayment to be entered as the decision. If the parties are in agreement as to the amount of the deficiency or overpayment to be entered as the decision pursuant to the findings and conclusions of the Court, then they, or either of them, shall file promptly with the Court an original and two copies of a computation showing the amount of the deficiency, liability, or overpayment and
>                                               (continued...)

On January 24, 2002, we entered our decision that there was a $238,847.24 overpayment of estate tax paid after the mailing of the notice of deficiency and that there was no penalty due from the estate under section 6662(a).  That decision was appealed and affirmed and is now final.  Sec. 7481(a).

Respondent's computation contained the following documents:

(1) Respondent's computation statement, the pertinent information of which is listed as follows:

| Tax assessed and paid | | $624,594.41 |
|---|---|---|
| Payments: | | |
| July 12, 1991 | $60,164.54 | |
| April 15, 1993 | 63,052.00 | |
| March 31, 1998 | 501,377.87 | |
| Total payments | 624,594.41 | |
| | | |
| Tax liability pursuant to mandate | | 385,747.17 |
| Overpayment | | 238,847.24 |
| Penalty sec. 6662(a) | | None |

(2) Form 3614-A, Estate Tax, which recomputed in detail the estate's estate tax liability;

(3) Form 6180, Line Adjustment--Estate Tax, which recomputed in detail decedent's taxable estate;

---

[3](...continued)
that there is no disagreement that the figures shown are in accordance with the findings and conclusions of the Court.  In the case of an overpayment, the computation shall also include the amount and date of each payment made by the petitioner.  The Court will then enter its decision.

(4) a detailed interest calculation which determined the estate's total Federal deficiency interest deduction as $209,943.54; and

(5) Form 3623, Statement of Account. For simplicity, the following table is an extraction of the information therein contained:

|  | Tax | Interest |
|---|---|---|
| Revised liability | $385,747.17 | -- |
| Assessment (tax on return) | 60,164.54 | -- |
| Tax Court assessment (5/12/98) | 564,429.87 | $410,848.76 |
| Total assessments | 624,594.41 | -- |
| (Decrease) in assessment | (238,847.24) | |
| Revised liability | 385,747.17 | |
| Payments | | |
| Payment with return (7/12/91) | 60,164.54 | |
| Credit transfer 1992 (4/15/93) | 63,052.00 | |
| Advance payment[1] (3/31/98) | 501,377.87 | 144,947.89 |
| Total payments | 624,594.41 | |
| (Overpayment) | (238,847.24) | |

[1]Advance payment totaling $646,325.76 received on Mar. 31, 1998. Of the total payment, $501,377.87 was applied towards the additional tax assessment, and $144,947.89 was applied towards the additional interest assessment made on May 12, 1998.

The interest referred to in this document is interest on the underpayment of tax that accrued prior to the estate's payment of $646,325.76 on March 31, 1998. Hereafter, we refer to interest accrued during that period as "underpayment interest". See Sunoco, Inc. & Subs. v. Commissioner, 122 T.C. 88 (2004).

On May 6, 2002, after our final decision, respondent abated $180,564.04 of the previously assessed underpayment interest and

$238,847.24 of the previously assessed estate tax.  On May 13, 2002, respondent issued to the estate a refund check of $210,467.35, consisting of a $153,510.41 refund for overpayment of estate tax and $56,956.94 in interest on that refunded amount. Respondent computed the $153,510.41 portion of the refund by subtracting $85,336.83 from the $238,847.24 overpayment amount in our final decision.  According to respondent, the $85,336.83 was the amount of assessed but unpaid underpayment interest.  On October 6, 2003, respondent abated $20,341.20 in underpayment interest.  On October 6, 2003, respondent refunded $30,108.47 to the estate.[4]

## Discussion

In its motion, the estate argues that the amount refunded by respondent, $210,467.35 ($153,510.41 in overpaid estate taxes and $56,956.94 in interest on that amount) was incorrect.  It is the

---

[4]Respondent alleges that this represented a $20,341.20 underpayment interest abatement and $9,767.27 in interest thereon.  According to respondent, he initially applied the 1992 income tax overpayment to the estate's estate tax deficiency as of Mar. 15, 1996, but the correct date was Apr. 15, 1993.  In his response to the estate's motion, respondent explains:

This amount was abated as a result of applying the $63,052 income tax overpayment credit to the correct date (April 15, 1993).  This amount, plus interest of $9,767.27, was refunded to petitioner on October 6, 2003.

 *     *     *     *     *     *     *

Until October 6, 2003, the credit was incorrectly applied effective March 15, 1996.

estate's position that since this Court entered a decision that there was a $238,847.24 overpayment, it is this amount, plus interest thereon, which should be refunded to the estate. Accordingly, the estate seeks $85,336.83, the difference between $238,847.24 and $153,510.41, plus interest thereon.[5]  We ordered respondent to respond to the motion.

In response, respondent argues that at the time the Court's decision became final, the estate owed assessed and unpaid underpayment interest of $85,336.83.  Respondent acknowledges that the estate's total payments exceed both the tax and interest regarding the estate tax liability but bases his argument on the allocations of the payments that respondent made between tax and interest.  Respondent argues that he had originally, before the final decision, assessed underpayment interest in the amount of $410,848.76 and allocated $144,947.89 (from the $646,325.76, March 31, 1998, advance payment) to that underpayment interest. On the basis of the final decision, respondent explains that he abated $180,564.04 in underpayment interest.  Thus, after all respondent's allocations and abatements, respondent alleges that $85,336.83 in underpayment interest remained unpaid.  Respondent states that he subtracted this amount from the $238,847.24 overpayment that we determined, and he applied the $85,336.83 to

_____

[5]In its motion, the estate refers to $85,337.83.  However, it is clear that the estate made a mathematical error, and the correct figure is $85,336.83.

assessed but unpaid interest pursuant to section 6402. This resulted in the May 13, 2002, refund of $210,467.35, which consisted of $153,510.41 ($238,847.24 minus $85,336.83) plus interest on the $153,510.41. Respondent argues that pursuant to section 6402(a) he is entitled to credit part of the $238,847.24 overpayment against interest that accrued on the unpaid estate tax for the period before the estate's $646,325.76 payment on March 31, 1998. Neither party cites any caselaw to support their respective positions. Both parties have submitted written arguments in support of their positions, and both state that they do not request a hearing on this matter.

The parties stipulated that our decision, that the estate had an overpayment of $238,847.24, was in accordance with our opinion in Estate of Smith v. Commissioner, T.C. Memo. 2001-303. The decision was affirmed by the Court of Appeals for the Fifth Circuit. See Estate of Smith v. Commissioner, 54 Fed. Appx. 413 (5th Cir. 2002). Both parties agree that our opinion and decision are now final. Respondent, nevertheless, argues that he was entitled to refund less than the $238,847.24 overpayment amount, by applying $85,336.83 of that overpayment amount to assessed and unpaid underpayment interest which apparently he did not factor into his computation of the overpayment amount that is in our final decision. We must first decide whether the amount of an "overpayment" must include consideration of any

underpayment interest owed by a taxpayer at the time of the overpayment calculation.  Stated differently, can there be an "overpayment" in an amount that has not been reduced by unpaid underpayment interest?

1.  <u>What Constitutes an Overpayment?</u>

The Code does not have an all-inclusive definition of an "overpayment".  Section 6401 provides examples of certain types of overpayments.  For instance, the term "overpayment" includes "that part of the amount of the payment of any * * * tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto."  Sec. 6401(a).  On the other hand, section 6401(c) provides that an "amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid."  However, these specific provisions do not provide a general definition of the term.  The Supreme Court in <u>Jones v. Liberty Glass Co.</u>, 332 U.S. 524, 531 (1947), has defined an overpayment as follows:

> we read the word "overpayment" in its usual sense, as meaning any payment in excess of that which is properly due.  Such an excess payment may be traced to an error in mathematics or in judgment or in interpretation of facts or law.  And the error may be committed by the taxpayer or by the revenue agents.  Whatever the reason, the payment of more than is rightfully due is what characterizes an overpayment.

See also <u>United States v. Dalm</u>, 494 U.S. 596, 609 n.6 (1990) ("The commonsense interpretation is that a tax is overpaid when a

taxpayer pays more than is owed, for whatever reason or no reason at all."); <u>Sunoco, Inc. & Subs. v. Commissioner</u>, 122 T.C. 88 (2004); <u>Bachner v. Commissioner</u>, 109 T.C. 125 (1997), affd. without published opinion 172 F.3d 859 (3d Cir. 1998); <u>Estate of Baumgardner v. Commissioner</u>, 85 T.C. 445, 450 (1985). Obviously, as we have previously observed: "In order to determine the existence of an overpayment, there must first be a determination of the amount of tax properly due." <u>Winn-Dixie Stores, Inc. & Subs. v. Commissioner</u>, 110 T.C. 291, 295 n.5 (1998) (citing <u>Girard Trust Bank v. United States</u>, 226 Ct. Cl. 366, 369, 643 F.2d 725, 727 (1981)). This leads to the question of the meaning of the term "tax".

The Code generally treats underpayment interest as tax. Section 6601(e)(1) provides:

> SEC. 6601(e). Applicable Rules.--Except as otherwise provided in this title--
>
> (1) Interest treated as tax.--Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes. <u>Any reference in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.</u> [Emphasis added.]

Section 6512(b)(1)[6] confers our overpayment jurisdiction in cases that are properly before the Court pursuant to our deficiency jurisdiction.[7] The pertinent part of section 6512(b)(1) provides

---

[6]Sec. 6512(b)(1) provides:

SEC. 6512(b). Overpayment Determined by Tax Court.--

(1) Jurisdiction to determine.--Except as provided by paragraph (3) and by section 7463, if the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year, of gift tax for the same calendar year or calendar quarter, of estate tax in respect of the taxable estate of the same decedent, or of tax imposed by chapter 41, 42, 43, or 44 with respect to any act (or failure to act) to which such petition relates for the same taxable period, in respect of which the Secretary determined the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer. If a notice of appeal in respect of the decision of the Tax Court is filed under section 7483, the Secretary is authorized to refund or credit the overpayment determined by the Tax Court to the extent the overpayment is not contested on appeal.

[7]As we have previously stated:

Overpayment jurisdiction depends on whether we have jurisdiction to find that "there is no deficiency" or "that there is a deficiency." Barton v. Commissioner, 97 T.C. 548, 552 (1991). Respondent has issued a notice of deficiency containing a determination that petitioner is liable for deficiencies in income tax for 1988 through 1991. Petitioner filed a timely petition. Therefore, we have jurisdiction and are required to find that there either is or is not a deficiency for each of the years 1988 through 1991. Estate of
(continued...)

that if the Tax Court "finds that the taxpayer has made an overpayment * * * of <u>estate tax</u> * * * the Tax Court shall have jurisdiction to determine the amount of such overpayment". (Emphasis added.)  Section 6512(b) is not part of the deficiency procedures in subchapter B of chapter 63.[8]  Therefore, the reference to tax in section 6512(b) must, pursuant to section 6601(e), include interest on tax.  As we stated in <u>Barton v. Commissioner</u>, 97 T.C. 548, 552 (1991):

> section 6601(e) states that interest shall be treated as tax and that any reference in title 26 to the term "tax" "shall be deemed also to refer to interest."  The lone exception to this statutory rule relates to subchapter B of chapter 63 containing both the definition of "deficiency" and this Court's jurisdictional authority to redetermine a "deficiency". Section 6512, which gives this Court jurisdiction to determine overpayments, is not within subchapter B of chapter 63, and the literal terms of section 6601(e)(1) provide that interest is to be treated as tax for all other purposes in title 26, including section 6512(b). * * *[9]

---

[7](...continued)
<u>Baumgardner v. Commissioner</u>, 85 T.C. 445, 448 (1985). It follows that we also have jurisdiction to determine whether petitioner has made overpayments of income tax for the same years.  Sec. 6512(b); <u>Barton v. Commissioner</u>, <u>supra</u> at 552.  [<u>Winn-Dixie Stores, Inc. & Subs. v. Commissioner</u>, 110 T.C. 291, 295 (1998).]

[8]The only reference to "overpayment" in subch. B of ch. 63 is in sec. 6214(e) which provides:  "For provision giving Tax Court jurisdiction to order a refund of an overpayment and to award sanctions, see section 6512(b)(2)."

[9]In <u>Estate of Baumgardner v. Commissioner</u>, 85 T.C. 445, 452 (1985), we stated:  "Interest may be part of an overpayment if the interest accrued and was paid prior to the time the overpayment was claimed or arose."

See Winn-Dixie Stores, Inc. & Subs. v. Commissioner, supra at 295 ("An 'overpayment' of tax can include interest. Section 6601(e)(1) provides that interest shall be treated as tax and that any reference in title 26 to the term 'tax' shall be deemed also to refer to 'interest'. The lone exception to this rule is that interest is not considered a tax for purposes of determining a 'deficiency'".).[10]  As we recognized in Lincir v. Commissioner,

---

[10]The Chief Counsel's National Office has acknowledged in field service advice that:

> As explained in Winn-Dixie Stores, Inc. v. Commissioner, 110 T.C. 291 (1998), the Tax Court has jurisdiction to determine overpayments of income tax. I.R.C. § 6512(b).  Because I.R.C. § 6601(e)(1) provides that interest shall be treated as a tax, an overpayment of tax includes any interest that is part of such overpayment.  The statutory exception in I.R.C. § 6601(a) [sic] that excludes interest as a tax for purposes of determining a deficiency under I.R.C. § 6211(a) does not apply to overpayments.  As long as the Service has determined a deficiency in tax for the years at issue, the Tax Court has jurisdiction to determine an overpayment of tax, including interest, for those years.  Estate of Baumgardner, 85 T.C. 445 (1986). [Field Serv. Adv. 1999-24017 (June 18, 1999).]

In Field Service Advice 2000-01003 (Jan. 7, 2000), the Chief Counsel's National Office explained:

> Code section 6512(b) defines the Tax Court's jurisdiction to determine overpayments.  In general, the court has jurisdiction to determine the amount of an overpayment in income tax for a taxable year where it finds "that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year," or where the court finds "there is a deficiency but that the taxpayer has made an overpayment of such tax."  Id., §6512(b)(1).  Further, in determining whether X Corp has overpaid its

(continued...)

115 T.C. 293, 298 (2000), affd. 32 Fed. Appx. 278 (9th Cir.

2002):

> Consistent with section 6601(e), the Court does have jurisdiction to redetermine statutory interest where a taxpayer has properly invoked the Court's overpayment jurisdiction pursuant to section 6512.  See Barton v. Commissioner, 97 T.C. 548, 554-555 (1991). In Winn-Dixie Stores, Inc. & Subs. v. Commissioner, 110 T.C. 291 (1998), we held that the Court had jurisdiction under section 6512 to review the taxpayers' claim that they had overpaid statutory interest for the years in issue where the Commissioner had rejected the taxpayers' request pursuant to section 6402(a) to offset the tax deficiencies (and interest) for the years before the Court against the taxpayers' overpayments for earlier years. * * *[11]

See also Sunoco, Inc. & Subs. v. Commissioner, 122 T.C. at 94

("Respondent concedes that this Court has jurisdiction under

section 6512(b) to determine an overpayment based upon

petitioner's claim that it overpaid underpayment interest.

---

[10](...continued)
taxes, the court has jurisdiction to determine whether X Corp overpaid interest by virtue of its entitlement to a zero interest rate on underpayments for the years before the court.  Winn-Dixie Stores, Inc. v. Commissioner, 110 T.C. 291 (1998). * * *

[11]See Goettee v. Commissioner, T.C. Memo. 2003-43, where we observed:

Section 6512(b) provides, inter alia, that if a taxpayer properly invokes our overpayment jurisdiction under section 6512(b), then we have jurisdiction to determine the amount of the taxpayer's overpayment. This jurisdiction under section 6512 also permits us to redetermine a taxpayer's statutory interest.  Lincir v. Commissioner, 115 T.C. 293, 298 (2000), affd. 32 Fed. Appx. 278 (9th Cir. 2002); see Zfass v. Commissioner, 118 F.3d 184, 192 n.9 (4th Cir. 1997), affg. T.C. Memo. 1996-167.

Respondent acknowledges that excess underpayment interest which has been assessed and paid by petitioner 'becomes part of the overpayment, i.e., a payment in excess of that which is properly due.'").[12]

---

[12]The Chief Counsel's National Office addressed the meaning of the term "overpayment" and our overpayment jurisdiction to determine underpayment interest in field service advice:

> The [Tax] Court does have jurisdiction to consider alleged overpayments of underpayment interest as part of its overpayment jurisdiction. Such excessive interest, once assessed and paid, becomes part of an overpayment, i.e., a payment in excess of that which is properly due. Jones v. Liberty Glass Co., 332 U.S. 524, 531 (1947); Baumgardner v. Commissioner, 85 T.C. 445 (1985). At the time of the overpayment, previous payments of tax and previous payments of interest merge to become the refundable amount of the overpayment, regardless of their previous designation as tax or interest. Baumgardner, at 457-58; see also section 6601(e)(1); Alexander Proudfoot Co. v. United States, 454 F.2d 1379, 1383 (1972) ("deficiency interest . . . has been deemed an integral part of the tax"); Barton v. Commissioner, 97 T.C. 548 (1991) (Tax Court has jurisdiction to consider overpayment of interest under former section 6621(c) even though it does not have jurisdiction over a proposed determination of yet-to-be assessed and paid underpayment interest).

> \* \* \* \* \* \* \*

> Thus, in Winn-Dixie Stores, Inc. v. Commissioner, 110 T.C. 291 (1998), the court held that it had jurisdiction to consider the effect of the Service's failure to honor the taxpayer's request that the Service credit overpayments of tax from other tax years against the proposed liabilities before the court because such crediting would have reduced the amount of underpayment interest due from the taxpayer on the deficiencies. Critical to the Court's exercise of jurisdiction was the taxpayer's payment of the tax plus the underpayment interest determined by the Service

(continued...)

Respondent makes no argument in this case that underpayment interest is not an appropriate factor to be considered in determining an overpayment of tax. Indeed, respondent's own regulations provide:

> there can be no overpayment of tax until the entire tax liability has been satisfied. Therefore, the dates of overpayment of any tax are the date of payment of the first amount which (when added to previous payments) is in excess of the tax liability (including any interest, addition to the tax, or additional amount) * * * [Sec. 301.6611-1(b), Proced. & Admin. Regs.; emphasis added.[13]]

This regulation provides two examples of assessments, payments, and resulting overpayments. The second example in subpart (c) of the regulation involves a situation where a deficiency had been assessed against a corporate taxpayer and the deficiency and interest had been paid. Subsequently, it was determined that there was no deficiency. In delineating the amounts and dates of overpayments, the regulation provides that "The amount of any

---

[12](...continued)
before the taxpayer asked the court to determine an overpayment of tax, including underpayment interest.

Field Serv. Adv. 2000-12049 (Mar. 24, 2000).

[13]The estate cites this regulation in its motion. In respondent's response to the motion, respondent neither cites to nor argues against the applicability of this regulation. In Estate of Baumgardner v. Commissioner, 85 T.C. at 451-452, we cited the aforementioned regulation in support of our jurisdiction to consider underpayment interest as part of our overpayment jurisdiction. In the 19 years following our Baumgardner opinion, the Commissioner has not modified this regulatory definition of an "overpayment".

interest paid with respect to the deficiency * * * is also an overpayment."[14]  Sec. 301.6611-1(c), Proced. & Admin. Regs.

In order to determine whether or not an overpayment exists, we must first determine the proper amount of tax.[15]  In light of the above-cited cases and section 301.6611-1(b), Proced. & Admin. Regs., we hold that for purposes of determining an overpayment of tax pursuant to section 6512(b), the proper tax includes underpayment interest and that the amount of an overpayment is

---

[14]The Chief Counsel's National Office echoes this position in field service advice:  "Although payments of underpayment interest are not considered in determining a deficiency, they can be weighed in determining whether an overpayment exists."  Field Serv. Adv. 2000-12049 (Mar. 24, 2000).

[15]We have held that in making an overpayment determination, the tax which is "properly due" is the correct amount of tax, regardless of whether the correct tax has been or could be assessed at the time of our decision.  See Bachner v. Commissioner, 109 T.C. 125 (1997), affd. without published opinion 172 F.3d 859 (3d Cir. 1998), where we found there was no overpayment of the taxpayer's proper tax even though the statute of limitations barred assessment of that tax for the year in issue.  We relied on the holding in Lewis v. Reynolds, 284 U.S. 281, 283 (1932), wherein the Court stated:

> An overpayment must appear before refund is authorized. Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded.

Bachner was decided on remand from the Court of Appeals for the Third Circuit, which had held that the question of whether there was an overpayment was an issue that was independent of whether there was a deficiency.  Bachner v. Commissioner, 81 F.3d 1274, 1279 (3d Cir. 1996).

the amount by which payments exceed the tax, including any underpayment interest.[16]

2. Sections 6402(a) and 6512(b)(4)

In his response, respondent explains that the estate's refund is less than the $238,847.24 overpayment amount, because section 6402(a) entitled him to apply part of the $238,847.24 to assessed but unpaid underpayment interest. Section 6402(a) provides:

SEC. 6402. AUTHORITY TO MAKE CREDITS OR REFUNDS.

(a) General Rule.--In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), and (e) refund any balance to such person.

Respondent cites only section 6402 and does not cite or rely on section 6512(b)(4). However, we address the application of both sections 6402 and 6512(b)(4). Section 6512(b)(4) provides:

(4) Denial of jurisdiction regarding certain credits and reductions.--The Tax Court shall have no jurisdiction under this subsection to restrain or review any credit or reduction made by the Secretary under section 6402.

---

[16]In field service advice, the Chief Counsel's National Office states:

At the time of the overpayment, previous payments of tax and previous payments of interest merge to become the refundable amount of the overpayment, regardless of their previous designation as tax or interest. [Field Serv. Adv. 2000-12049 (Mar. 24, 2000).]

We do not think that sections 6402 and 6512(b)(4) contemplate the situation presented in this case.  A more logical interpretation of sections 6402 and 6512(b)(4) is that this Court may not restrain or review the Commissioner's section 6402(a) application of an overpayment amount to tax liabilities other than those which were the subject of the overpayment decision. See, e.g., Savage v. Commissioner, 112 T.C. 46 (1999).  Our interpretation is buttressed by the language of section 6402(a), which gives the Secretary the power to "credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment".  Before section 6402 comes into play, there must be an overpayment of a specific tax, and the amount of that overpayment must be calculated by determining the proper amount of tax and determining the amount by which payments exceed the proper tax.  As we have held above, the proper amount of tax for purposes of an overpayment includes underpayment interest.

Section 6512(b)(2), which forms the basis of our jurisdiction to order the refund of an overpayment provides:

> (2) Jurisdiction to enforce.--If, after 120 days after a decision of the Tax Court has become final, the Secretary has failed to refund the overpayment determined by the Tax Court, together with the interest thereon as provided by subchapter B of chapter 67, then the Tax Court, upon motion by the taxpayer, shall have

jurisdiction to order the refund of such overpayment and interest. * * *

Were we to allow respondent to reduce the refund of an overpayment by an amount that should have already been factored into determining the amount of the overpayment, we would, in effect, be allowing respondent to disregard the amount of the overpayment in our final decision. That would do violence to the definition of the term "overpayment" and ignore the binding nature of our final decision. Our decision was clear: the estate overpaid its estate tax by $238,847.24. Respondent's position that he is reducing the refund of the overpayment by the amount of assessed but unpaid underpayment interest simply fails to recognize that underpayment interest is part of the calculation that must be made in arriving at the amount of an overpayment.

We hold that we have jurisdiction over the estate's motion under section 6512(b)(2) and that sections 6402 and 6512(b)(4) do not apply where our final decision in the same case precludes the existence of the tax liabilities to which the Commissioner attempts to apply the overpayment.[17]

---

[17]In an opinion issued before the enactment of sec. 6512(b)(4), the Court of Appeals for the Second Circuit observed:

> These provisions [regarding our deficiency jurisdiction], taken together with §6512(b)(1), authorize the Tax Court definitively to determine the amount of any deficiency and overpayment for a taxable year brought before it by a taxpayer petition, and provide for the court to take into account any prior

(continued...)

3. <u>Finality</u>

A prerequisite to filing a motion pursuant to section 6512(b)(2) is the finality of the overpayment decision. We cannot modify our final decision that there was an overpayment of $238,847.24 solely because of respondent's allegation that he failed to include all the underpayment interest in his calculation of the overpayment amount.

We recently discussed the standards for vacating a final decision in <u>Cinema '84 v. Commissioner</u>, 122 T.C. 264 (2004). In that opinion, we noted that as a general rule the finality of a decision is absolute. See <u>Abatti v. Commissioner</u>, 86 T.C. 1319, 1323 (1986), affd. 859 F.2d 115 (9th Cir. 1988). We noted that we have jurisdiction to set aside a decision where there is a fraud on the court. See <u>Toscano v. Commissioner</u>, 441 F.2d 930 (9th Cir. 1971); <u>Kenner v. Commissioner</u>, 387 F.2d 689 (7th Cir. 1968); <u>Taub v. Commissioner</u>, 64 T.C. 741, 751 (1975), affd. without published opinion 538 F.2d 314 (2d Cir. 1976); see also <u>Senate Realty Corp. v. Commissioner</u>, 511 F.2d 929 (2d Cir. 1975)). We also noted that we vacated a final decision where a

---

17(...continued)
§6402(a) application of that overpayment as a credit envisioned by §6512(b)(1), but militate strongly against an interpretation that a prior §6402(a) application of the overpayment divests the Tax Court of jurisdiction to perform its §6512(b)(1) obligation to determine the amount of the overpayment. * * * [<u>Belloff v. Commissioner</u>, 996 F.2d 607, 613 (2d Cir. 1993), affg. T.C. Memo. 1991-350.]

clerical error was discovered after the decision had become final.  Michaels v. Commissioner, 144 F.3d 495 (7th Cir. 1998), affg. T.C. Memo. 1995-294.[18]  Here, it is clear that there was neither fraud nor clerical error, but only respondent's failure to include the full amount of underpayment interest in his computation of the overpayment amount.  This is not grounds to give us jurisdiction to modify our final decision.[19]  In Wapnick v. Commissioner, 365 F.3d 131, 132 (2d Cir. 2004), the court explained the finality of Tax Court decisions stating:

> section 7481 of the Internal Revenue Code provides that a decision of the Tax Court becomes final "upon the expiration of the time allowed for filing a petition for certiorari, if the decision of the Tax Court has been affirmed or the appeal dismissed by the United States Court of Appeals and no petition for certiorari has been duly filed."  26 U.S.C. §7481(a)(2)(A).  In

---

[18]In Cinema '84 v. Commissioner, 122 T.C. 264 (2004), we noted that the Court of Appeals for the Sixth Circuit had previously held that a final decision of the Tax Court could be vacated in situations involving mutual mistake, see Reo Motors, Inc. v. Commissioner, 219 F.2d 610 (6th Cir. 1955), but that in a more recent case, Harbold v. Commissioner, 51 F.3d 618, 622 (6th Cir. 1995), the Court of Appeals for the Sixth Circuit held that Reo Motors, Inc. was overruled by the Supreme Court in Lasky v. Commissioner, 352 U.S. 1027 (1957), and that the Court would no longer follow the rationale of Reo Motors, Inc.

[19]In Stamm Intl. Corp. v. Commissioner, 90 T.C. 315 (1988), the Commissioner sought relief from a settlement agreement because "the computations for entry of decisions" resulted in less than the Commissioner expected due to his miscalculations. Id. at 320.  In denying the Commissioner's motion, we noted that the considerations involved in whether to grant relief from the settlement agreement were "akin to those involved in vacating a judgment entered by consent.  In such cases, the parties are held to their agreement without regard to whether the judgment is correct on the merits."  Id. at 322.

considering the predecessor to section 7481, the Supreme Court ruled that after an order of the Tax Court has become final the "statute deprives us of jurisdiction over the case." R. Simpson & Co. v. Commissioner, 321 U.S. 225, 230 (1944); see also Lasky v. Commissioner, 235 F.2d 97, 99 (9th Cir. 1956). The Court recognized that "the usual rules of law applicable in court procedure must be changed" to achieve the finality needed in the realm of tax decisions. See Simpson, 321 U.S. at 228.

It is suggested that the result of our opinion is inequitable and hands the estate a windfall. However, the fact that our overpayment decision in this case was appealed, affirmed, and has become final, deprives us, and any other court, of jurisdiction to modify the final decision that there was an overpayment of $238,847.24.[20] This rule of finality can result

---

[20]Sec. 6512(a) generally deprives any other court from taking jurisdiction to determine an overpayment if the taxpayer has filed a petition in the Tax Court. The origin of sec. 6512(a), as applied to estate taxes, is sec. 319(a) of the Revenue Act of 1926, ch. 27, 44 Stat. (Part 2) 84. S. Rept. 52, 69th Cong., 1st Sess. (1926), 1939-1 C.B. (Part 2) 332, 351, explains the reasons for the enactment of sec. 319(a) of the Revenue Act of 1926 as follows:

But if he [taxpayer] does elect to file a petition with the Board his entire tax liability for the year in question (except in case of fraud) is finally and completely settled by the decision of the Board when it has become final, whether the decision is by findings of fact and opinion, or by dismissal, as in case of lack of prosecution, insufficiency of evidence to sustain the petition, or on the taxpayer's own motion. The duty of the Commissioner to assess the deficiency thus determined is mandatory, and no matter how meritorious a claim for abatement of the assessment or for refund he can not entertain it, nor can suit be maintained against the United States or the collector. Finality is the end sought to be attained by these

(continued...)

in either the taxpayer's or the Commissioner's receiving a benefit that would not have been available had a mistake been corrected before a decision became final.[21]

This Court applies equitable principles in deciding the amount of a deficiency, see Woods v. Commissioner, 92 T.C. 776, 784 (1989), or the amount of an overpayment. In Bachner v. Commissioner, 109 T.C. 125, 131 n.7 (1997), we noted:

> In a Tax Court proceeding, either party is free to raise equity-based defenses to the assertions of the other party, and the Court, insofar as it has jurisdiction over the main claim, is free to entertain those defenses. Estate of Mueller v. Commissioner, 101 T.C. 551, 557 (1993). Here, we have jurisdiction to determine the overpayment under sec. 6512(b)(1) and, therefore, respondent is free to raise the defense provided in Lewis v. Reynolds, 284 U.S. 281 (1932).
> * * *

However, as previously explained, once the decision in this case specifying the amount of the overpayment became final, we lost

---

[20](...continued)
provisions of the bill, and the committee is convinced that to allow the reopening of the question of the tax for the year involved either by the taxpayer or by the Commissioner (save in the sole case of fraud) would be highly undesirable.

See Estate of Bailly v. Commissioner, 81 T.C. 949, 955 n.10 (1983).

[21]For a discussion of the hardships that can result from the rules governing finality, see Estate of Bailly v. Commissioner, supra.

jurisdiction to modify our decision that there was an overpayment of $238,847.24.[22]

We have consistently held that we do not have equitable power to expand our jurisdiction. As we stated in Woods v. Commissioner, supra at 784:

> An historical analysis of our cases discloses numerous instances where we have applied equitable principles in deciding issues over which we had jurisdiction. For example, we have applied the equity-based principles of waiver, duty of consistency, estoppel, substantial compliance, abuse of discretion, laches, and the tax benefit rule. "While we cannot expand our jurisdiction through equitable principles, we can apply equitable principles in the disposition of

---

[22]Sec. 7481(c) allows only a taxpayer (not the Commissioner) to file a motion for the redetermination of interest under certain circumstances. The estate's motion before us is based on sec. 6512(b). Respondent makes no argument that sec. 7481(c) has any relevance to the estate's motion. Indeed, the 1997 legislative history regarding sec. 7481(c) specifically states:

> In clarifying the Tax Court's jurisdiction over interest determinations, the conferees do not intend to limit any other remedies that taxpayers may currently have with respect to such determinations, including in particular refund proceedings relating solely to the amount of interest due. [H. Conf. Rept. 105-220, at 733 (1997), 1997-4 C.B. (Vol. 2) 1457, 2203.]

A proceeding under sec. 6512(b) is one of the "other remedies" that taxpayers had. In field service advice, the Chief Counsel's National Office has recognized that the Tax Court has jurisdiction under sec. 6512(b) to consider alleged overpayments of underpayment interest and that:

> the Tax Court has auxiliary jurisdiction under section 7481(c) to determine whether the taxpayer has made an overpayment of interest or the Service has underpaid interest based upon a deficiency or overpayment decision entered by the court * * * [Field Serv. Adv. 2000-12049 (Mar. 24, 2000); emphasis added.]

cases that come within our jurisdiction." Berkey v. Commissioner, 90 T.C. 259, 270 (1988) (Hamblen, J., concurring). [Fn. refs. omitted.[23]]

When a Tax Court decision becomes final and there is no jurisdiction in any other Federal Court, the Internal Revenue Service (IRS) does not shy away from arguing that lack of jurisdiction trumps equity. For example, in United States v. Dalm, 494 U.S. 596 (1990), the taxpayer who had been the administratrix of her former employer's estate received substantial payments from the deceased employer's brother. Those payments were reported on a Federal gift tax return, and the gift tax was paid by the taxpayer. Subsequently, the IRS examined the taxpayer's income tax return for the year in which she received the payments and determined that the payments were taxable income rather than a gift. The taxpayer petitioned this Court, and we decided that the payments were taxable income. Subsequently, the taxpayer filed a claim for refund of the gift tax. The IRS denied the claim. In a subsequent litigation over the erroneously paid gift tax, the United States Supreme Court held that the statute deprived the District Court of jurisdiction over the action for refund of the gift tax. The Court distinguished

_____

[23]In Commissioner v. McCoy, 484 U.S. 3, 6 (1987), the Supreme Court held that in an appeal of a Tax Court decision, the appellate court's authority was restricted to review those matters over which the Tax Court had jurisdiction and that the Court of Appeals could not expand its own jurisdiction because the Court of Appeals believed it was necessary "in order to achieve a fair and just result."

its prior opinion in <u>Bull v. United States</u>, 295 U.S. 247 (1935), in which it had applied the doctrine of equitable recoupment by noting that in <u>Bull</u> equitable recoupment was raised as a defense to the Government's claims in a suit over which the Court clearly had jurisdiction. The Court explained:

> A distinction that has jurisdiction as its central concept is not meaningless. In <u>Bull</u>, the executor sought equitable recoupment of the estate tax in an action for refund of income tax, over which it was undisputed that the Court of Claims had jurisdiction. See n.4, <u>supra</u>. All that was at issue was whether the Court of Claims, in the interests of equity, could adjust the income tax owed to the Government to take account of an estate tax paid in error but which the executor could not recover in a separate refund action. Here, Dalm does not seek to invoke equitable recoupment in determining her income tax liability; she has already litigated that liability [in the Tax Court] without raising a claim of equitable recoupment and is foreclosed from relitigating it now. See §6512(a).
> * * * [<u>United States v. Dalm</u>, <u>supra</u> at 606.]

Here, as in <u>Dalm</u>, our decision has become final. As a result, neither we nor any other court has jurisdiction to modify the decision.

We hold that the estate is entitled to a refund of the $238,847.24 overpayment, plus interest on the overpayment,[24] less any amounts that respondent has previously refunded with respect

---

[24]Interest on "overpayments" is provided for by sec. 6611.

to the $238,847.24 overpayment.  Accordingly, we shall grant the estate's motion.

<u>An appropriate order granting the estate's motion for proceeding to enforce overpayment determination will be entered</u>.

Reviewed by the Court.

COHEN, SWIFT, WELLS, HALPERN, CHIECHI, and VASQUEZ, <u>JJ.</u>, agree with this majority opinion.

FOLEY and MARVEL, <u>JJ.</u>, concur in result only.

LARO, J., concurring:  I disagree with the implication in this Court's Opinion that this Court is powerless to relieve a litigant of a final decision upon a proper showing made in connection with a motion subject to the principles of rule 60(b) of the Federal Rules of Civil Procedure (rule 60(b)).  As I concluded in my concurring opinion in Estate of Branson v. Commissioner, 113 T.C. 6, 41 (1999), affd. 264 F.3d 904 (9th Cir. 2001), I believe that this Court is a court of law that has the authority to apply the judicial powers of a District Court.  Whereas rule 60(b) authorizes a District Court upon motion by a litigant to relieve that litigant of a final judgment in certain extraordinary cases, I believe that this Court in those cases also has that authority for the reasons that I stated in Estate of Branson.  I do not decide whether the Court in this case should grant a motion subject to the principles of rule 60(b) in that such a motion is not before us.

A.  Motions in this Court To Vacate or Revise a Decision

Motions in this Court to vacate or revise a decision are covered by Rule 162, Tax Court Rules of Practice and Procedure (Rule 162).  Pursuant to Rule 162, "Any motion to vacate or revise a decision, with or without a new or further trial, shall be filed within 30 days after the decision has been entered, unless the Court shall otherwise permit."  Rule 162 provides no guidance as to when this Court will file a motion to vacate more

than 30 days after a decision is entered, or more importantly, when this Court will grant a motion to vacate.

Because Rule 162 is silent on this matter, I look for guidance to that Rule's counterpart in the Federal Rules of Civil Procedure. Rule 1(a), Tax Court Rules of Practice and Procedure; see Dusha v. Commissioner, 82 T.C. 592, 598-599 (1984). That counterpart, rule 60 of the Federal Rules of Civil Procedure (rule 60), states:

> Rule 60. Relief From Judgment or Order
>
> (a) Clerical Mistakes. Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.
>
> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall

be made within a reasonable time, and for reasons (1),
(2), and (3) not more than one year after the judgment,
order, or proceeding was entered or taken.  A motion
under this subdivision (b) does not affect the finality
of a judgment or suspend its operation.  This rule does
not limit the power of a court to entertain an
independent action to relieve a party from a judgment,
order, or proceeding, or to grant relief to a defendant
not actually personally notified as provided in Title
28, U.S.C., § 1655, or to set aside a judgment for
fraud upon the court.  Writs of coram nobis, coram
vobis, audita querela, and bills of review and bills in
the nature of a bill of review, are abolished, and the
procedure for obtaining any relief from a judgment
shall be by motion as prescribed in these rules or by
an independent action.

Although rule 60 is not technically applicable to this Court,

Cinema '84 v. Commissioner, 122 T.C. 264, 267-268 (2004); see

also sec. 7453 ("proceedings of the Tax Court * * * shall be

conducted in accordance with such rules of practice and procedure

* * * as the Tax Court may prescribe);[1] rule 1 of the Federal

Rules of Civil Procedure (the Federal Rules of Civil Procedure

"govern the procedure in the United States district courts in all

suits of a civil nature"), its principles are instructive as to

the interpretation and application of our Rule 162, see Evans

Publg., Inc. v Commissioner, 119 T.C. 242, 249 (2002); Estate of

Fulmer v. Commissioner, 83 T.C. 302, 309 (1984).

Pursuant to rule 60(b), a District Court may in a civil case

relieve a litigant from a "final judgment" for reasons other than

---

[1] Unless otherwise indicated, section references are to the
applicable versions of the Internal Revenue Code.

clerical mistake.[2]  Rule 60(b) allows such relief where the desire for justice outweighs the value of finality of a judgment that is unconscionable to execute and that was rendered without fault or neglect on the part of the litigant seeking to reform it.  W. Va. Oil & Gas Co. v. George E. Breece Lumber Co., 213 F.2d 702, 704 (5th Cir. 1954); see also Marine Ins. Co. v. Hodgson, 11 U.S. 332, 336 (1813).  A litigant may obtain rule 60(b) relief in one of two ways.  First, the litigant may move the court in which the judgment was entered for relief under one of the six grounds listed in rule 60(b).  Banker's Mortgage Co. v. United States, 423 F.2d 73, 77-78 (5th Cir. 1970).  Second, the litigant may bring an independent action to obtain relief from a judgment, order, or proceeding.  Id.  In either case, a proceeding as to postjudgment relief under rule 60(b) is simply a continuation of the original proceeding and does not require that the court in which the rule 60(b) proceeding is pending have an independent basis of jurisdiction in order to grant such relief. United States v. Beggerly, 524 U.S. 38, 45-46 (1998); Banker's Mortgage Co. v. United States, supra at 78.  A rule 60(b) proceeding is "ancillary to or a continuation of the original suit", Banker's Mortgage Co. v. United States, supra at 78; see

---

[2] Relief from a judgment because of clerical mistake is governed by paragraph (a) of rule 60.  W. Va. Oil & Gas Co. v. George E. Breece Lumber Co., 213 F.2d 702, 705 (5th Cir. 1954); see also Michaels v. Commissioner, 144 F.3d 495 (7th Cir. 1998), affg. T.C. Memo. 1995-294.

also United States v. Beggerly, supra at 45-46, and a court has jurisdiction over that proceeding if it had jurisdiction over the original suit, Smith v. Widman Trucking & Excavating, Inc., 627 F.2d 792, 799 (7th Cir. 1980); see also Charter Township v. City of Muskegon, 303 F.3d 755, 760-763 (6th Cir. 2002).

B. This Court's Predecessors

The roots of this Court, the United States Tax Court, are traced to the Revenue Act of 1924, ch. 234, sec. 900(a), (k), 43 Stat. 336, 338, wherein Congress established the Board of Tax Appeals (Board) as "an independent agency in the executive branch of the Government." In the Revenue Act of 1942, ch. 619, sec. 504, 56 Stat. 798, 957, Congress changed the name of the Board to the "Tax Court of the United States" but did not change the latter tribunal's designation as an independent agency within the Executive Branch. That designation was changed in the Tax Reform Act of 1969 (1969 Act), Pub. L. 91-172, sec. 951, 83 Stat. 487, 730. There, through its enactment of section 7441, Congress "hereby established, under article I of the Constitution of the United States, a court of record to be known as the United States Tax Court."

The predecessors to this Court were not courts of law, and they did not possess the judicial powers of a District Court. As independent agencies in the Executive Branch, this Court's predecessors had only those powers which were conferred upon them

by the Executive Branch, powers which included no incidental principles of equity.  Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418 (1943); Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 725 (1929).  The fact that these predecessors were executive agencies and not courts of law made them fundamentally different from the District Courts.  The fact that these predecessors were executive agencies and not courts of law made them fundamentally different from this Court.

    C.  <u>Relevant Jurisprudence Concerning the Authority of This Court's Predecessors To Apply Rule 60(b)</u>

Sections 7481 and 7483 generally provide that a decision of this Court becomes "final" 90 days from the date that the decision is entered, absent a timely filed notice of appeal.  In the case of an appeal, section 7481 provides similar time periods as to each possibility related to the resolution of that appeal.

The vast preponderance of judicial jurisprudence compels the conclusion that this Court's predecessors had little, if any, power to vacate a decision that had become "final" under sections 7481 and 7483 (or the predecessors thereof).  The gist of this jurisprudence was that these sections provided set rules on the finality of a decision, R. Simpson & Co. v. Commissioner, 321 U.S. 225 (1944); Helvering v. N. Coal Co., 293 U.S. 191 (1934); see also Lasky v. Commissioner, 352 U.S. 1027 (1957) (per curiam opinion relying entirely upon R. Simpson & Co. v. Commissioner,

supra, and Helvering v. N. Coal Co., supra),[3] and that the
predecessors to this Court were mere administrative agencies that
lacked equitable powers to alter those rules, Lasky v.
Commissioner, 235 F.2d 97 (9th Cir. 1956), affd. per curiam
352 U.S. 1027 (1957).  This jurisprudence also reflected the view
of some of the Courts of Appeals that this Court's predecessors

---

[3] Helvering v. N. Coal Co., 293 U.S. 191 (1934), concerned
four cases which had arisen in the Board.  On Oct. 23, 1933, the
Supreme Court had affirmed judgments entered as to those cases
and, on Nov. 20, 1933, had denied petitions for rehearing as to
three of those judgments.  Following the Court's issuance on Nov.
29, 1933, of the mandates as to the four cases, additional
petitions for rehearing were filed on May 21, 1934.  In denying
these additional petitions, the Court noted that the applicable
predecessor to sec. 7481(a)(3) provided that "The decision of the
board shall become final * * * Upon the expiration of thirty days
from the date of issuance of the mandate of the Supreme Court, if
such court directs that the decision of the board be affirmed or
the petition for review dismissed."  Id. at 192.  The Court held
that the "authoritative and explicit requirement of the statute"
precluded it from rehearing its decision; i.e., the additional
petitions for rehearing were filed after the time limits set
forth in the statute.  Id.

R. Simpson & Co. v. Commissioner, 321 U.S. 225 (1944), also
arose in the Board.  After the Supreme Court on Nov. 9, 1942, had
denied the taxpayer's petition for certiorari as to a decision
that had affirmed the Board, and after the 25-day period in the
Court's rules for the filing of a petition for rehearing of that
denial had expired, the taxpayer petitioned the Court for a
rehearing.  The Court dismissed that petition for want of
jurisdiction.  The Court noted that the applicable predecessor of
sec. 7481(a)(2)(B) provided that "The decision of the Tax Court
[the predecessor to this Court] shall become final * * * Upon the
denial of a petition for certiorari, if the decision of the Tax
Court has been affirmed".  Id. at 227.  The Court held that this
statute deprived it of jurisdiction upon its denial of the
petition for certiorari and that "denial" under the statute
occurred when the Court's denial of certiorari was final under
its rules; i.e., upon the expiration of the 25-day period allowed
for requesting reconsideration.

could in certain cases relieve a party of a judgment notwithstanding its finality under the statute.  E.g., Kenner v. Commissioner, 387 F.2d 689 (7th Cir. 1968) (relief may be allowed in the case of fraud on the court); Reo Motors, Inc. v. Commissioner, 219 F.2d 610 (6th Cir. 1955) (relief may be allowed in the case of a mutual mistake of fact);[4] La Floridienne J. Buttgenbach & Co. v. Commissioner, 63 F.2d 630 (5th Cir. 1933) (relief may be allowed in the case of a joint stipulation to vacate).  As to the Court of Appeals for the Fifth Circuit, the circuit to which an appeal of this case lies, that court had ruled that a final decision resulting from a "redetermination based on a stipulation may be vacated [by a predecessor to this Court] at the instance of the parties to the stipulation for good cause shown."  La Floridienne J. Buttgenbach & Co. v. Commissioner, supra at 631.  The court stated:

> Counsel for the Commissioner here stands to the petition [to vacate the decision] if it can be lawfully granted, but as in duty bound contends that the Board after four years cannot vacate its order, especially since Revenue Act of 1926, § 1005 (26 USCA § 1228), expressly declares:  "The decision of the board shall become final--(1) Upon the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time.  * * *"
> We appreciate the necessity of prompt decisions touching taxes, and that they shall stand firm.  The

---

[4] In Harbold v. Commissioner, 51 F.3d 618, 622 (6th Cir. 1995), the Court of Appeals for the Sixth Circuit stated that it would no longer follow Reo Motors, Inc. v. Commissioner, 219 F.2d 610 (6th Cir. 1955), in that, it concluded, that case had been overruled by Lasky v. Commissioner, 352 U.S. 1027 (1957).

reviews mentioned in section 1005 no doubt measure the taxpayer's right to litigate, and the Board's decision is final on exhaustion or neglect of them as against further appeals.  But it does not follow that the decision may not be further dealt with by the Board itself in its discretion or that no extraordinary relief against it can ever be had.  Decisions of the Secretary of the Interior in matters affecting the public lands were by statute declared to be final, but that meant only as to further appeals, and did not exclude the courts from inquiring in extraordinary cases whether the law had been violated thereby. Johnson v. Towsley, 13 Wall. 72, 83, 20 L. Ed. 485. The Secretary himself can sometimes revise his own decision, as when obtained by fraud, though the statute declare it final and conclusive.  Lane, Secretary v. United States ex rel. Mickadiet, 241 U. S. 201, 36 S. Ct. 599, 60 L. Ed. 956.  So the Secretary of Labor's decisions on deportation proceedings are by statute final, but on extraordinary occasions they are inquired into on habeas corpus.  Lindsey, U. S. Immigration Inspector v. Dobra (C. C. A.) 62 F.(2d) 116.  [Id. at 630-631.]

Whereas the Courts of Appeals for the Ninth Circuit stated in Swall v. Commissioner, 122 F.2d 324, 324-325 (9th Cir. 1941), that La Floridienne J. Buttgenbach & Co. v. Commissioner, supra, was "in effect overruled by Helvering v. Northern Coal Co., supra," I have not heard the Court of Appeals for the Fifth Circuit, nor any of the other 11 Courts of Appeals, to have stated similarly.

    D.  1969 Act

    The 1969 Act made this Court the functional equivalent of a District Court.  See 1969 Act sec. 951, 83 Stat. 730; see also Freytag v. Commissioner, 501 U.S. 868, 890-892 (1991).  Through that Act, Congress changed the status of this Court from an

"independent agency in the Executive Branch" to a "court of record" "established * * * under Article I of the Constitution". See sec. 7441 before and after amendment by the 1969 Act; see also Freytag v. Commissioner, supra at 890-891. This Court currently sits as a district courtlike tribunal that "exercises a portion of the judicial power of the United States * * * to the exclusion of any other function". Id. at 891. This Court's district courtlike status means that its decisions are subject to review only by a Federal appellate court. See sec. 7482(a).

E.  Freytag v. Commissioner

In Old Colony Trust Co. v. Commissioner, 279 U.S. at 725, the Supreme Court held that the Board was not a court but was merely an executive or administrative board. The Supreme Court also held that proceedings in the Board were administrative inquiries and not judicial proceedings. Id. In Freytag v. Commissioner, supra at 885, respondent argued that the 1969 Act did not change these features as to this Court. The Supreme Court disagreed. In contrast to its earlier decision as to the status of the Board, the Supreme Court held that Congress through the 1969 Act had established this Court as a court of law that functions much like a District Court in this Court's exclusive exercise of a portion of the judicial power of the United States. Id. at 890-892. The Supreme Court noted that this Court is

different from other non-Article III tribunals by virtue of this Court's "exclusively judicial role".  Id. at 892.

F.  This Court Has Equitable Powers That Its Predecessors Did Not

Following Freytag v. Commissioner, supra, many Courts of Appeals now agree that this Court has equitable powers that this Court's predecessors did not have and that this Court's powers are harmonious with the powers of a District Court.  In Estate of Branson v. Commissioner, 264 F.3d at 908, for example, the Court of Appeals for the Ninth Circuit stated that this Court's exercise of judicial powers

> includes the authority to apply the full range of
> equitable principles generally granted to courts that
> possess judicial powers.  Even if the Tax Court does
> not have far-reaching general equitable powers [a
> statement that presumably was made in reply to the
> Supreme Court's dictum in Commissioner v. McCoy,
> 484 U.S. 3, 7 (1987) that this Court "lacks general
> equitable powers"[5]], it can apply equitable principles

---

[5] That dictum, when taken in context, is not remarkable. Nor is it inconsistent with my view that this Court has district courtlike equitable powers.  The context of this dictum indicates that the Supreme Court was merely noting the well-settled rule that no court of law may ignore the express intent of Congress as to the imposition of interest and penalties.  See Commissioner v. McCoy, 484 U.S. 3, 7 (1987); see also Flight Attendants Against UAL Offset v. Commissioner, 165 F.3d 572, 578 (7th Cir. 1999) ("In context, the Supreme Court's dictum in Commissioner v. McCoy, 484 U.S. 3, 7, 98 L. Ed. 2d 2, 108 S. Ct. 217 (1987) (per curiam), that the Tax Court lacks "general equitable powers" means only that the Tax Court is not empowered to override statutory limits on its power by forgiving interest and penalties that Congress has imposed for nonpayment of taxes--but then no court is, unless the imposition would be unconstitutional.").  In fact, the Court made no mention of McCoy when it decided Freytag

(continued...)

and exercise equitable powers within its own jurisdictional competence. * * * [Quotation marks omitted.]

The Court of Appeals for the Seventh Circuit stated similarly in Flight Attendants Against UAL Offset v. Commissioner, 165 F.3d 572, 578 (7th Cir. 1999). There, the Court of Appeals for the Seventh Circuit, while suggesting but not deciding that this Court has the power to apply the equitable doctrines of tolling and estoppel, stated that the "the predecessor bodies to the Tax Court, such as the Board of Tax Appeals, were administrative agencies having more limited powers than a regular court * * * [b]ut the present Tax Court operates pretty indistinguishably from a federal district court." Accord Buchine v. Commissioner, 20 F.3d 173, 176 (5th Cir. 1994) (Court of Appeals for the Fifth Circuit concluded that this Court is empowered to apply the equitable principle of reformation to a case over which it already had jurisdiction), affg. T.C. Memo. 1992-36.

G. Ability of This Court To Apply the Principles of Rule 60(b)

Here, no one disputes that we had jurisdiction to redetermine the estate tax deficiency that was at issue. If one of the parties in this case were now to make a motion subject to the principles of rule 60(b), the issue as I see it would be whether we would have authority to give effect to a purported

---

5(...continued)
v. Commissioner, 501 U.S. 868 (1991), 4 years later.

inequitable mistake that was made in the decision underlying that deficiency. To my mind, if a District Court could have decided such a motion, then so can we. This Court's powers are harmonious with the powers of a District Court. This Court's powers are different from the powers held by this Court's predecessors.

Although it is true that this Court is a court of limited jurisdiction, so are all other Federal courts. All Federal courts possess only that power authorized by Constitution and statute and may not expand that power by judicial decree. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701-702 (1982). The ability of this and every other Federal Court to apply rule 60(b) principles to a final decision flows from a finding that we and they had jurisdiction to render and enter that decision in the first place. A court need not and does not apply equitable principles to acquire jurisdiction in a rule 60(b) proceeding. The court simply applies the principles of that rule to a case over which it already has jurisdiction. This Court's well-established position on its equitable powers is consistent with this tenet. In accordance with that position, this Court has held that it may apply equitable principles to dispose of cases over which the Court already has jurisdiction.

<u>Woods v. Commissioner</u>, 92 T.C. 776, 784-785 (1989); cf. <u>Buchine v. Commissioner</u>, <u>supra</u> at 178.

This Court's application of rule 60(b) is not unprecedented. In <u>Brannon's of Shawnee, Inc. v. Commissioner</u>, 69 T.C. 999, 1000-1002 (1978), for example, this Court applied subparagraph (4) of rule 60(b) to conclude that this Court was empowered to vacate a final decision that was entered in a case for which this Court lacked jurisdiction to decide. I also note this Court's authority to apply paragraph (a) of rule 60. In <u>Michaels v. Commissioner</u>, 144 F.3d 495 (7th Cir. 1998), affg. T.C. Memo. 1995-294, the Court of Appeals for the Seventh Circuit held that this Court may at any time rely upon paragraph (a) to vacate a final decision to correct a clerical error. The taxpayers in that case had argued that the fact that their decision was "final" meant that this Court was not at liberty to alter it. In rejecting this argument, the Court of Appeals for the Seventh Circuit stated:

> The Michaelses cannot credibly argue that the error in the 1995 decision was anything other than a clerical mistake. They are forced, therefore, to argue that the Tax Court in this case simply should not be allowed to exercise a power analogous to that afforded the district courts by Rule 60(a). In attempting to do so, the Michaelses make several points that would be relevant only if Rule 60(b) were at issue, such as that the Commissioner has not shown that the failure to correct the mistake earlier was the result of "excusable neglect" or that his motion to correct it was made "within a reasonable time." These arguments, of course, are unavailing, since Rule 60(a) requires no such showing.

In addition, the Tax Court's power to correct clerical errors does not conflict with the statutory framework establishing finality for that court's decisions.  The Michaelses point out that the substance of a decision becomes final and unappealable once the statutory period for filing an appeal has expired.  But the same is largely true of district court decisions, subject to such extraordinary remedies as those contained in Rule 60(b), and yet the expiration of the time for filing a notice of appeal does not prevent a district court from acting under Rule 60(a) to correct a clerical error in its judgment.  See, e.g., <u>American Fed'n of Grain Millers Local 24 v. Cargill, Inc.</u>, 15 F.3d 726 (7th Cir. 1994).  The Michaelses' arguments that the Tax Court should be prevented from taking the same action because it is a creation of Article I rather than Article III of the Constitution, or because it is a court of limited jurisdiction, are not persuasive.  [<u>Id.</u> at 497; fn. ref. omitted.]

I am not unmindful of this Court's opinions in <u>Taub v. Commissioner</u>, 64 T.C. 741 (1975), affd. without published opinion 538 F.2d 314 (2d Cir. 1976), and <u>Hazim v. Commissioner</u>, 82 T.C. 471 (1984).  In <u>Taub v. Commissioner</u>, <u>supra</u> at 751, the Court stated that "We find nothing in our new status * * *  [under Article I] which expands the narrow exception to the general rule of finality of decisions carved out" in the case of fraud on the Court that would give us jurisdiction to vacate a final decision. In <u>Hazim v. Commissioner</u>, <u>supra</u> at 475, the Court repeated this statement in concluding that this Court's jurisdiction to set aside a final decision is limited.  The referenced statement in these cases conflicts directly with the Supreme Court's later finding in <u>Freytag v. Commissioner</u>, 501 U.S. 865 (1991), that this Court's status in Article I means that this Court is no

longer an executive or administrative board, as were this Court's predecessors, but is a court of law that exercises a portion of the judicial power of the United States to the exclusion of any other function.  This Court's holdings in Taub and Hazim also fail to take into account the fact that a proceeding under rule 60(b) is a continuation of the original proceeding and does not require that the court overseeing the proceeding have an independent basis of jurisdiction upon which to act.

Nor does my opinion change on account of any other case that was decided before Freytag v. Commissioner, supra.  As I see it, the relevant cases as to the current powers of this Court are those cases that pertain to this Court's status as an Article I court, with the most relevant of those cases being those which were decided after Freytag.  Freytag establishes that this Court is a court of law with all of the incidental powers which pertain thereto, rather than an administrative or executive board that simply decides administrative inquires using limited powers inclusive of no incidental principles of equity.  Accord Flight Attendants Against UAL Offset v. Commissioner, 165 F.3d 572, 578 (7th Cir. 1999).  The cases decided before Freytag do not address this now well-settled status of this Court as a court of law that performs exclusively judicial functions in a manner that is harmonious with that of a District Court.  None of these pre-Freytag cases, therefore, has any bearing on the types of powers

that this Court is authorized to exercise in performing this Court's judicial functions. Congress's elevation of this Court to an "exclusively judicial" court means that this Court's legal and equitable powers are diametrically different from this Court's executive agency predecessors which wielded executive powers only. Congress's elevation of this Court to an "exclusively judicial" court means that this Court possesses all of the inherent powers of a District Court.[6]

The Court's Opinion on pages 23-24 quotes Wapnick v. Commissioner, 365 F.3d 131 (2d Cir. 2004), as to the need for a tax decision to be final. The Supreme Court opinion discussed in

_____

[6] I note in particular Contl. Equities, Inc. v. Commissioner, 551 F.2d 74 (5th Cir. 1977), revg. on grounds not relevant herein T.C. Memo. 1974-189. There, the Court of Appeals for the Fifth Circuit held that this Court had no authority to apply the doctrine of equitable recoupment. We recently stated as to that decision:

more than 2 decades have passed since the 1977 decision in Continental Equities, Inc. v. Commissioner, 551 F.2d 74 (5th Cir. 1977). In that interval, the concept of Tax Court jurisdiction has been substantially refined. Concerning equitable recoupment in particular, the opinion by the Supreme Court in United States v. Dalm, 494 U.S. 596 (1990), which served as a catalyst for our own reevaluation of our position, was issued only in 1990. Furthermore, since 1977 the Courts of Appeals have begun increasingly to acknowledge the difference between exercising equitable powers to take jurisdiction and applying equitable principles to decide matters within the Court's jurisdiction. For instance, a series of recent decisions has consistently affirmed on such basis Tax Court authority to reform written agreements and to apply equitable estoppel. * * * [Estate of Orenstein v. Commissioner, T.C. Memo. 2000-150.]

the quotation, namely <u>R. Simpson & Co. v. Commissioner</u>, 321 U.S. 225 (1944), dealt with a predecessor to this Court and, more importantly, did not involve a motion under rule 60(b). (Nor did <u>Helvering v. Northern Coal Co.</u>, 293 U.S. 191 (1934), or <u>Lasky v. Commissioner</u>, 325 U.S. 1027 (1957), deal with such a motion.[7]) I see no reason why a need for finality is any greater for a decision entered in a tax case heard by this Court as opposed to a judgment entered in a tax case heard by a District Court. (I have found nothing that prohibits a District Court from applying rule 60(b) to relieve a party of a final judgment in a Federal tax case.) As the Court of Appeals for the Seventh Circuit stated in <u>Flight Attendants Against UAL Offset v. Commissioner</u>, <u>supra</u> at 578, with regard to the ability of this Court to apply the equitable doctrines of tolling and estoppel which are applied by District Courts: "The overlap between the district courts' jurisdiction over refund suits and the Tax Court's jurisdiction over deficiency suits--both jurisdictions exclusive, but the taxpayer allowed to choose between them--makes it anomalous and confusing to multiply distinctions between the doctrines applied

---

[7] The rule drawn from this trilogy of Supreme Court cases is that a request for review by that Court in a civil case must be timely filed within an applicable period prescribed by Congress and that the untimely filing of such a request deprives the Court of jurisdiction. See <u>FEC v. NRA Political Victory Fund</u>, 513 U.S. 88, 90 (1994); <u>Mo. v. Jenkins</u>, 495 U.S. 33, 45 (1990). The rule, of course, is different when a Federal trial court applies the principles of rule 60(b) within the time limits set forth therein.

by the two types of court".  As stated by the Court of Appeals for the Eleventh Circuit in the setting of equitable estoppel:

> If the Tax Court lacked authority to entertain a claim of equitable estoppel, taxpayers with such a claim would no longer have a choice of fora for their tax issues.  They would effectively be forced to pay their taxes and sue for a refund, submitting all of their claims to the district courts.  Taxpayers would then be barred by res judicata from relitigating a claim in the Tax Court.  Thus, taxpayers would essentially be denied the right to challenge deficiencies in the Tax Court if they wanted to assert an equitable estoppel claim.  This would be an unfair choice to pose to taxpayers, and would undermine the purpose of the Tax Court.  We therefore conclude that the Tax Court did have jurisdiction over the Bokums' equitable estoppel claim.  [Bokum v. Commissioner, 992 F.2d 1136, 1140-1141 (11th Cir. 1993), affg. T.C. Memo. 1990-21.]

Accord Estate of Branson v. Commissioner, 264 F.3d at 911-912.

Both of these statements apply equally to an application of rule 60(b).

VASQUEZ and GALE, JJ., agree with this concurring opinion.

THORNTON, <u>J</u>., concurring:  The majority opinion holds that this Court's previous decision as to the amount of the estate tax overpayment necessarily incorporated the estate's liability for certain underpayment interest that had already been assessed (and had not been abated).  I agree with this holding, as confined to its facts.  Inasmuch as the facts of this case do not present any issue as to the treatment of <u>unassessed</u> underpayment interest in the calculation of an overpayment, I do not believe that the majority opinion should be construed as resolving that issue.

Background

Certain procedural facts, not discussed in the majority opinion, are important for understanding how the underpayment interest in question had come to be assessed before this Court entered its decision as to the overpayment.

On June 4, 1997, we issued our original opinion in the instant case.  See <u>Estate of Smith v. Commissioner</u>, 108 T.C. 412 (1997).[1]  Pursuant to that opinion, on February 18, 1998, we entered our original decision determining an estate tax deficiency of $564,429.87.

---

[1] Pursuant to our original opinion, the parties submitted separate computations of the estate tax deficiency under Rule 155.  On Jan. 12, 1998, we issued a supplemental opinion resolving a disagreement between the parties with respect to their computations.  See <u>Estate of Smith v. Commissioner</u>, 110 T.C. 12 (1998).

On March 31, 1998, the estate paid $646,325.76, comprised of a portion of the estate tax deficiency and an estimate of underpayment interest.[2] On April 10, 1998, the estate filed a timely notice of appeal with the Court of Appeals for the Fifth Circuit. The estate did not, however, file bond, as generally required to stay assessment or collection of the deficiency during appellate review. See sec. 7485(a). Consequently, on May 12, 1998, respondent assessed an estate tax deficiency of $564,429.87 plus underpayment interest of $410,848.76. Respondent gave the estate credit for the March 31, 1998, payment of $646,325.76 and also gave the estate credit for a 1992 income tax overpayment of $63,052. After taking these credits into account, the estate had a balance due of $265,900.87. Collection of this balance due, however, was administratively stayed during the pendency of the estate's appeal.

On December 15, 1999, the Court of Appeals for the Fifth Circuit reversed, vacated, and remanded our original decision for further proceedings with respect to the estate tax deficiency. See Estate of Smith v. Commissioner, 198 F.3d 515 (1999).

---

[2] Respondent's Appeals Office estimated the amount of interest on the then "underpayment" of estate tax. In conjunction with this estimate, respondent allowed a deduction from the gross estate for estimated interest which would be due on the deficiency, determined as of a hypothetical payment date of Mar. 31, 1998.

On April 3, 2000, the estate filed a motion to restrain collection, abate assessment, and refund amounts collected by respondent. In Estate of Smith v. Commissioner, 115 T.C. 342 (2000), we denied the estate's motion.

On November 21, 2001, pursuant to the remand from the Court of Appeals for the Fifth Circuit, we issued another opinion in this case, again sustaining respondent's determination of an estate tax deficiency.[3] Estate of Smith v. Commissioner, T.C. Memo. 2001-303. On January 18, 2002, respondent filed respondent's computation for entry of decision along with a proposed decision. The parties acknowledged that respondent's computation was in accordance with our last-mentioned opinion and stipulated that we should enter a decision "that there is an overpayment in estate tax in the amount of $238,847.24, which amount was paid after the mailing of the notice of deficiency". On January 24, 2002, we entered a decision that there was a $238,847.24 overpayment of estate tax paid after the mailing of the notice of deficiency.

On May 6, 2002, respondent abated $180,564.04 of the previously assessed underpayment interest and $238,847.24 of the previously assessed estate tax. On May 13, 2002, respondent

---

[3] Ultimately, the parties agreed that the estate tax liability pursuant to the mandate was $385,747.17. Respondent's computations submitted under Rule 155 considered this amount in calculating the estate's overpayment.

issued to the estate a refund check of $210,467.35, consisting of a $153,510.41 refund for overpayment of estate tax and $56,956.94 in interest on that refunded amount. Respondent computed the $153,510.41 portion of the refund by subtracting $85,336.83 from the $238,847.24 overpayment amount in our final decision.[4]

On November 7, 2002, the Court of Appeals for the Fifth Circuit affirmed our second decision in Estate of Smith and entered judgment against the estate. Estate of Smith v. Commissioner, 54 Fed. Appx. 413 (5th Cir. 2002). The estate did not file a timely petition for certiorari with the U.S. Supreme Court, and our second decision thereafter became final. See sec. 7481(a)(2)(A) (providing that Tax Court decisions become final when petition for certiorari not filed on time); Sup. Ct. R. 13 (providing that petition for certiorari is timely if filed within 90 days of entry of judgment by a U.S. Court of Appeals).

In summary, to make a long story short: when this Court entered its decision as to the amount of the overpayment in question, the estate had a liability for assessed and unpaid underpayment interest. In computing the estate's overpayment, respondent omitted this liability. Respondent now argues that he is entitled to reduce the estate's overpayment to compensate for

---

[4] According to respondent, the $85,336.83 amount was the amount of assessed but unpaid underpayment interest. On Oct. 6, 2003, respondent made an additional abatement of $20,341.20 in underpayment interest and refunded $30,108.47 to the estate.

this omission. The majority opinion rejects respondent's argument and grants the estate's motion to enforce our overpayment determination.

Inclusion of Assessed Interest in Overpayment Determination

Insofar as it addresses the treatment of assessed underpayment interest, the majority opinion is a logical extension of Estate of Baumgardner v. Commissioner, 85 T.C. 445 (1985), which we have followed consistently for nearly 20 years. Estate of Baumgardner held that "overpayment", within the meaning of section 6512(b)(1), includes assessed and paid interest. In Estate of Baumgardner, this Court concluded that because the interest on an estate tax deficiency had been assessed, we could exercise jurisdiction and decide the correct amount of interest to arrive at the correct amount of net overpayment. Although Estate of Baumgardner, unlike the instant case, involved interest that was paid prior to the overpayment determination, I do not believe that distinction warrants a different result. It follows from Estate of Baumgardner and its progeny that an overpayment should also reflect assessed but unpaid underpayment interest. It would make no sense to award an overpayment that includes assessed and paid interest while ignoring interest that has been assessed but remains unpaid.[5]

---

[5] For example, assume a simple hypothetical:  The taxpayer makes payments of $100,000, has a tax liability of $80,000
(continued...)

More fundamentally, the majority opinion is a natural application of the widely accepted definition of an overpayment as "any payment in excess of that which is properly due." <u>Jones v. Liberty Glass Co.</u>, 332 U.S. 524, 531 (1947). There would seem to be no question that assessed underpayment interest is "properly due". There is no question in this case about the other half of the equation; i.e., the amount of the taxpayer's payment. Thus, a straightforward application of the Supreme Court's definition of overpayment clearly supports the result in the majority opinion.

I agree with the majority opinion that sections 6402(a) and 6512(b)(4) do not demand a different result.

Section 6402(a) authorizes the Secretary to credit an overpayment against "any liability". I agree with the majority opinion that once we decide that there is an overpayment of tax, properly taking into account assessed underpayment interest, there is no longer any separate liability for the assessed underpayment interest against which the overpayment might be credited; rather, any liability for the assessed underpayment interest must be subsumed in the overpayment, if our final decision is to be respected and given effect.

---

[5](...continued)
(exclusive of interest), and owes assessed underpayment interest of $30,000. I believe this taxpayer has a $10,000 underpayment, rather than a $20,000 overpayment (as would be indicated if the assessed interest were omitted from the calculation).

Moreover, in enforcing our decision of an overpayment under section 6512(b)(2), we are not restraining or reviewing any credit or reduction made by respondent under section 6402. Instead, we are simply enforcing our decision that the estate has made an overpayment of tax. Because underpayment interest that is properly due must be considered in determining the amount of an overpayment, it follows that we have jurisdiction to order a refund of the overpayment consistent with our decision and not reduced by underpayment interest that has already been factored into our decision.

Inasmuch as the underpayment interest in question had already been computed and assessed when we entered our overpayment decision, there is no compelling practical reason why the underpayment interest should not have been included in the overpayment calculation. Indeed, in computing the estate's estate tax liability, respondent had allowed the underpayment interest as a section 2053 estate tax deduction. To be consistent, the overpayment computation should include consideration of this assessed underpayment interest, as the majority opinion holds.

Confining the Majority Opinion Holding to Its Facts

Properly confined to its procedural and factual context, then, and notwithstanding some rather open-ended language in the majority opinion, its holding is that the <u>assessed</u> underpayment

interest in question should have been taken into account in calculating the amount of the estate's overpayment.  I do not believe the majority opinion should be construed as deciding issues beyond those actually presented by the facts of this case.  In particular, I do not believe the majority opinion should be construed as deciding the proper treatment of <u>unassessed</u> interest in the calculation of an overpayment.  The resolution of that more difficult issue should await a case that squarely presents it.

GERBER, LARO, and GALE, <u>JJ</u>., agree with this concurring opinion.

GOEKE, J., dissenting:  The opinion adopted today reaches an unjust result, reasoning that the principle of finality requires that result.  The estate and respondent entered into agreed Rule 155 computations and submitted the computations to this Court with a suggested decision document.  The agreed computations clearly treat the overpayment of tax as an amount separate from the interest owed by the estate.  In arriving at the overpayment amount of $238,847.24, the parties simply subtracted the estate's tax liability ($385,747.17) from its payments that were applied to the tax liability ($624,594.41).  Indeed, the agreed computations include a chart that lists tax in one column, and interest in a separate column.  See majority op. p. 6.  These computations reveal the parties' intent not to include interest in the overpayment amount.

It is obvious from the computations that the separate treatment of interest and tax was not an accident.  Included in the parties' agreed computations is the following information:

| | |
|---|---|
| Total interest due . . . . . . . . | $209,943.54[1] |
| Interest paid . . . . . . . . . . | -$144,947.89 |
| Interest not paid <u>for which the estate was given a deduction</u> . . | $64,995.65 |

[1] The amount of total interest due was determined in reference to the estate's tax liability of $385,747.17.

The estate is provided an interest deduction for interest on its estate tax deficiency in the agreed computations, but the overpayment computation does not take into account that interest.

As a result, the Court's opinion allows the estate to receive a deduction for the amount of interest due, $209,943.54, having paid interest of only $144,947.89, and the adopted opinion orders respondent to forgo offsetting the overpayment refund by the outstanding interest liability, which as a result will never be collected.  Rather than inadvertence, the overpayment computation was the result of the parties' adherence to a longstanding practice, followed by parties in many of our cases, to submit agreed computations of overpayments without interest.  The adopted opinion ignores the parties' agreed overpayment computations to reach an incorrect and unjust result.

Indeed, the result reached by the adopted opinion is contrary to both statutory law and our Rules of Practice and Procedure (Rules).  This is the first instance where this Court has asserted the jurisdiction to overturn the Commissioner's offset of an overpayment pursuant to section 6402(a) to satisfy an interest assessment.  This Court does not have this asserted jurisdiction, but if it did, the estate should be estopped from successfully avoiding an agreement reached under our Rules that the agreed computation conformed with the Court's opinion in Estate of Smith v. Commissioner, T.C. Memo. 2001-303, affd. 54 Fed. Appx. 413 (5th Cir. 2002), and manipulating the judicial process by taking inconsistent positions to avoid the enforcement of its agreement.

I.    Basis of the Adopted Opinion

The foundation of the adopted opinion is that sections 6402(a) and 6512(b)(4) do not apply to the facts in this case. Section 6402(a) allows the Commissioner to credit the amount of an overpayment against "any liability in respect of an internal revenue tax" and to refund only the balance of that liability. The adopted opinion would establish that there is a flaw in that statutory language and that the term "any liability" was not intended to include interest (whether paid or unpaid, whether assessed or unassessed) when the interest arises from a deficiency that is also the subject of an overpayment of tax.

Section 6512(b)(4) provides "The Tax Court shall have no jurisdiction under this subsection to restrain or review any credit or reduction made by the Secretary under section 6402." Despite section 6512(b)(4), the adopted opinion would find that the Court may prevent the Commissioner from applying section 6402(a) to offset an unpaid interest liability against an overpayment determined by the Court when that interest liability arises in the same year before the Court.  This is an issue of first impression and raises the question why this apparent error in the statute has never arisen before.  Because some version of section 6402(a) has been part of the internal revenue statutory

scheme since 1949,[1] I suggest that one answer to the question is that there is no flaw in the statutory scheme. The statutory scheme is intended to permit the offset of overpayments with interest liabilities even arising in the same statutory year. The assumed error in the statute is not the result of a congressional misstep but rather judicial overreach. A construction of section 6402(a) that restricts interest offsets is inconsistent with the clear language of section 6512(b)(4), several other statutory provisions, and the general context of the Code dealing with Tax Court decisions. The statutory scheme operates smoothly if interest issues are addressed after decisions are entered by this Court regarding deficiencies and overpayments.

The report's only citation regarding the section 6402(a) analysis is Belloff v. Commissioner, 996 F.2d 607 (2d Cir. 1993), affg. T.C. Memo. 1991-350. Reliance on Belloff is misplaced.

---

[1] Sec. 6402(a) was first added to the Internal Revenue Code of 1939 at sec. 3770(a)(4) by the Tax Administrative Amendments of 1949, ch. 517, sec. 9(a), Pub. L. 271, and was moved to sec. 6402 by the Internal Revenue Code of 1954, ch. 736, 68 Stat. 730. It has been amended by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, secs. 3505 and 3711(c)(1), 112 Stat. 771, 781; Balanced Budget Act of 1997, Pub. L. 105-33, sec. 5514(a)(1), 111 Stat. 620; Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. 104-193, sec. 110(1)(7)(A), 110 Stat. 2173; Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 2653(b)(2), 98 Stat. 1155; Omnibus Budget Reconciliation Act of 1981, Pub. L. 97-35, sec. 2331(c)(1), 95 Stat. 861; and Tax Reform Act of 1976, Pub. L. 94-455, sec. 1906(b)(13)(A), (K), 90 Stat. 1834.

The Court of Appeals's holding in <u>Belloff</u> is that this Court must respect assessments set off under section 6402(a) if they are procedurally valid assessments and "will not address the merits of legal issues underlying the assessment." <u>Id.</u> at 617.  Indeed, section 6512(b)(4) specifically denies us jurisdiction to restrain or review "any credit or reduction made by the Secretary under section 6402" once the assessment is made.  On May 12, 1998, the interest assessment was made, and it was procedurally valid.  Our only authority to review this interest assessment is under section 7481(c) and Rule 261, neither of which is the subject of the estate's motion.

The statutory scheme, contrary to the assumptions of the adopted opinion, is based on a chronology that places the resolution of unpaid interest on a deficiency after the entry of decision.  "Unpaid" in this context means unaccounted for by the Commissioner or not treated as paid by the Commissioner.  The period of limitations for the assessment of interest provides an initial example of the fallacy in the adopted opinion that sections 6402(a) and 6512(b) do not mean what they say.

II.  <u>Statutory Conflicts Generated by the Adopted Opinion</u>

Section 6601(g) allows the Commissioner to assess and collect interest at any time during the period within which the tax to which such interest relates may be collected.  See also sec. 301.6601-1(f)(1), Proced. & Admin. Regs.  Generally, tax

must be assessed pursuant to section 6501, but interest may be assessed anytime during the collection period of the tax. This period is usually at least 10 years. Sec. 6502(a)(1). Therefore, the statutory scheme provides a distinct and longer assessment statute of limitations for interest, and bifurcates the tax and the interest in this context. In contrast, the adopted opinion accelerates interest assessment in the context of overpayment cases, and eliminates any possibility for later assessment of interest or the correction of a prior interest assessment. The plain language of the Code would require the Commissioner to determine interest liabilities after the determination and assessment of tax, including overpayments of tax, and offset those liabilities against the overpayment.

The analysis of the adopted opinion is also inconsistent with the statutory provisions permitting the parties to net interest obligations where there is an overlapping period when interest and/or tax has been underpaid and overpaid for different tax liabilities. Sec. 6621(d). The adopted opinion would require that all such netting be finalized at the time the decision document is entered. In other situations in the Code where subsequent events could alter the impact of a Tax Court decision, the Code has a specific exception that permits revisiting the results of the decision because of the subsequent events; for example, the statutory treatment of net operating

losses. Sec. 6511(d)(2)(B)(iii). Similar treatment is afforded for credit carrybacks. Sec. 6511(d)(4)(B). There is no corresponding provision regarding interest netting, although it is obvious that subsequent year payments and the result of other tax years can fundamentally change interest liabilities. This omission implies Congress did not intend that this Court fix interest liabilities in its decisions.

If Congress had intended that our overpayment decisions under section 6512(b) were to include final interest determinations, there would have been no need to include section 7481(c)(2)(B), and the language of section 7481(c)(3) would be inaccurate. Section 7481(c)(2)(B) specifically gives this Court jurisdiction to determine interest overpayments and underpayments after the Court has determined that there is an overpayment pursuant to section 6512(b). In addition, section 7481(c)(3) provides as follows:

> If the Tax Court determines under this subsection that the taxpayer has made an overpayment of interest or that the Secretary has made an underpayment of interest, then that determination shall be treated under section 6512(b)(1) as a determination of an overpayment of tax. An order of the Tax Court redetermining interest, when entered upon the records of the court, shall be reviewable in the same manner as a decision of the Tax Court.

Section 7481(c)(2)(B) would be unnecessary if the adopted opinion were correct, and the reference to the term "overpayment of tax" in section 7481(c)(3) is inconsistent with the whole rationale of the report and points out the inherent ambiguity in the term "overpayment". It is telling that Congress did not simply say "overpayment". In adding interest disputes to this Court's jurisdiction, Congress deemed it necessary to include section 6512(b) determinations and to provide that our interest determinations would be reviewable similar to our "overpayment of tax" determinations.  This congressional action would have been unnecessary if overpayment decisions included interest liability.

III. <u>Reliance on Baumgardner and Barton</u>

Reliance upon <u>Estate of Baumgardner v. Commissioner</u>, 85 T.C. 445 (1985) and <u>Barton v. Commissioner</u>, 97 T.C. 548 (1991), is not only misplaced, but misleading.  The rationales of <u>Baumgardner</u> and <u>Barton</u> are premised upon and relate to interest that has been <u>paid</u> or overpaid prior to the issuance of the notice of deficiency.  Neither case suggests, or leads to the conclusion that, the Court's overpayment jurisdiction contemplates assessed, but unpaid, interest.  In an overpayment context, we have no authority or jurisdiction to order respondent to abate interest otherwise properly assessed.

"Interest may be part of an overpayment if the interest accrued and <u>was paid prior</u> to the time the overpayment was claimed or arose. <u>This is the type of interest we are considering in this case.</u>" <u>Estate of Baumgardner v. Commissioner</u>, <u>supra</u> at 452 (emphasis added). "Our holding that the term 'overpayment' includes assessed and <u>paid</u> interest at the time of overpayment". <u>Id.</u> at 460 (emphasis added). "Petitioners contend that they <u>paid the increased interest</u> under section 6621(c), and that the Court has jurisdiction to determine a taxpayer's claim that there has been an overpayment of tax with respect to a year that is otherwise properly within the Court's jurisdiction." <u>Barton v. Commissioner</u>, <u>supra</u> at 550 (emphasis added). Neither of these cases, or the subsequent opinions following them, forced this Court to restrict the Commissioner's authority to offset, which is explicitly provided in section 6402(a).

IV. <u>Assessed v. Unassessed Interest</u>

Under the concurring analysis, it is suggested that the adopted opinion should be limited to assessed interest. My view is that there is no support in the statutory language for such a distinction. In the present case, although interest was assessed, it was interest on the liability before our first opinion was reversed and remanded ($410,000), not the correct amount based upon our revised opinion ($209,943.54, less the

payment of $144,947.89, leaving an unpaid balance of $64,995.65). The prior interest assessment in this case does not reflect the actual interest liability due and owing. When it was assessed, this interest was beyond our jurisdiction because the case was in a deficiency situation. Our authority to address this unpaid assessment of interest is now limited to section 7481(c) and Rule 261, neither of which are before us.

## V.   Rule 155

The present issue originates with this Court's execution of the decision document in question. The opinion was based on a computation which the parties agreed was in conformity with this Court's opinion after remand pursuant to Rule 155(a). The Court executed the decision relying on the parties' agreement without reviewing the agreed computation. A review of the computation would have revealed that the overpayment amount was not reduced by interest liabilities but that an interest deduction was permitted for the anticipated payment of Federal interest of $64,995.65 on the estate tax deficiency.

The estate represented to the Court that the computation submitted was in conformity with the Court's opinion and the estate also represented that the interest in the amount of $64,995.65 was deductible, explicitly acknowledging that such interest would be paid by offset against the overpayment of tax shown in the agreed Rule 155 computation. The Court relied upon

the estate's representation in executing the decision without reviewing or challenging the agreed computation. The Court now interprets the estate's position to be that the interest should not be paid because the overpayment was erroneously overstated. The estate has never explicitly argued this, but if the adopted opinion has correctly interpreted the estate's position,[2] the estate previously made a factual assertion on which the Court granted the deduction, that the interest payment would be made. If the adopted opinion's legal analysis is correct, the estate's change of course causes the Court to look foolish for relying on the estate's prior representation.

This Court should hold the estate to its stipulation under Rule 155(a). This is not a question of finality, rather one of consistency. The inconsistency created by this result threatens judicial integrity and the integrity of this Court's Rules. The estate is rewarded for misleading the Court and avoiding the agreement reached pursuant to Rule 155(a). This Court has the authority to construe the Rules to deny this abuse of our process and to reach a just result.

As Judge Laro explains, this Court has the authority of a court of law. We can implement that authority to fill in gaps in our Rules pursuant to Rule 1(a). We also have the inherent

---

[2] There are no briefs on this issue, and the estate's motion is unclear at best.

authority to enforce our own Rules to provide a just result. Rule 1(b); Goldsmith v. Bd. of Tax Appeals, 270 U.S. 117 (1926). This includes the authority to enforce agreements reached under our Rules. Willamette Indus., Inc. v. Commissioner, T.C. Memo. 1995-150. Implicit in the authority to enforce agreements reached under Rule 155(a) is the understanding that we enter decisions in conformity with the agreed computation. If the Court's interpretation of the decision was not in conformity with the parties' agreement and the Court's Opinion, we had no basis to enter the decision, and it should be vacated. The alternative is to enforce the parties' agreed interpretation of the term "overpayment".

I believe we have exceeded our statutory authority today, but perhaps the most unfortunate aspect of today's opinion is that Rule 155(a) now becomes a trap for the parties before our Court. In this case, the Court did not review the agreed Rule 155 computations submitted by the parties before executing the decision document. The adopted opinion determines that the Court is prevented from considering the agreed computations after a decision is entered, so the computation is ignored before and after the decision is executed. This effectively renders Rule 155(a) a nullity. The agreed computation becomes irrelevant to the outcome regarding the meaning and effect of the decision

document.  Given the ambiguity inherent in the term "overpayment", we have created a procedural pitfall.

For the stated reasons, I respectfully dissent.

HAINES, WHERRY, KROUPA, and HOLMES, JJ., agree with this dissenting opinion.

HOLMES, J., dissenting:  I fully agree with the detailed analysis of Judge Goeke's lucid dissent.  I write separately only to provide a brief introduction to what has become--unnecessarily in my view--a very complicated statutory analysis by focusing on what I see as three fundamental mistakes that the majority makes today.

The first lies on page 9 of the Court's opinion, where it states that what we are deciding is "whether the amount of an 'overpayment' must include consideration of any underpayment interest owed by a taxpayer at the time of the overpayment calculation."  (Emphasis added.)  What follows is the statutory interpretation that Judge Goeke analyzes.  However, I don't think this is the right question.  What we should be reviewing here is neither a term used in the Code nor a regulation, but only a term used in an agreed computation under Rule 155.

Most cases that we partly decide in a taxpayer's favor require computing exactly how much is owed by whom for the tax years in question.  This computation is nothing more than a complicated math problem, and one we leave for the parties them- selves to figure out.  "If the parties are in agreement as to the amount of the deficiency or overpayment to be entered as the decision * * *, then they, or either of them, shall file promptly with the Court * * * a computation showing the amount of the deficiency, liability, or overpayment and that there is no

disagreement that the figures shown are in accordance with the findings and conclusions of the Court." Rule 155(a), Tax Court Rules of Practice and Procedure.

That's what the estate and the Commissioner did here. Counsel for the estate signed the agreed decision documents based on the agreed computations, aware that the line item marked "overpayment" did not reflect unpaid interest. This is not surprising: Rule 155 governs all post-opinion computations (including computations of deficiency), and over time the IRS has developed an almost-unbroken custom of using Rule 155 to reach agreement on the amount of tax (rather than tax plus interest) owed. In fact, if interest computations are shown, they are to be labeled "for information only," Internal Revenue Manual 8.17.3.2.3 Applying Credits and Payments (2001), which is exactly what the parties did here. See Form 3623, Statement of Account Sched. 3. We then typically review any resulting disputes about the amount of tax owed under Rule 155(b) and disputes about the interest computations under Rule 261.

In this case, the estate, through counsel, had the opportunity to review the statement of account that the Commissioner prepared. This document clearly shows that interest and tax were to be considered and treated separately, that "overpayment" meant overpayment of tax only and "interest" included only interest assessed after the Court's initial

deficiency determination. The estate's counsel agreed to this terminology and should not now be allowed to prevail on a claim that the terms as used in this agreement have different meanings. This Court typically treats closing agreements, stipulations of fact, and settlements as contracts, holding parties to their terms. <u>Johnston v. Commissioner</u>, 122 T.C. 124 (2004) (stipulations); <u>Zaentz v. Commissioner</u>, 90 T.C. 753 (1988) (closing agreements); <u>Stamm Intl. Corp. v. Commissioner</u>, 90 T.C. 315 (1988) (settlements). I see no reason to deviate from that practice in this case and would hold that agreements under Rule 155 should be just as binding.[1]

The majority doesn't dispute that the parties' computation under Rule 155 should be binding on them, but it then chooses to resolve the dispute over its meaning quite unlike other courts would. When a legitimate question is raised about the meaning of an ambiguous term in a contract, courts will usually rely on evidence of what the parties intended. "If * * * a court refuses to consider evidence of particular meanings attached by the contracting parties, the court may discover a contract that neither party intended." Murray, Murray on Contracts, 1-5 sec. 86 (2001). That is just what has happened here, with the

---

[1] As Judge Goeke convincingly demonstrates, the parties so obviously agreed what the term meant that respondent allowed the estate a deduction for the accrued but unpaid interest that was shown in the computation.

majority redefining the term "overpayment" in a way that changes the parties' agreement. It answers the question--"Does the amount of an 'overpayment' include any underpayment interest owed by a taxpayer at the time of the overpayment calculation?" with a one-size-fits-all answer of "yes." The right answer should be "It depends"--with the answer being decided on the particular facts of the case at hand.

And this points to the second shortcoming in the majority's opinion--its focus on section 6512. That section is only a jurisdictional statute, and we construed the word "overpayment" in that section, via section 6601(e)'s general definition of "tax," to mean that we had jurisdiction over disputes about the overpayment of a tax plus interest instead of tax alone. Barton v. Commissioner, 97 T.C. 548, 552 (1991); Estate of Baumgardner v. Commissioner, 85 T.C. 445, 451-452 (1985). But this is not a case that turns on jurisdiction--everyone agrees we have jurisdiction in an appropriate case to order the payment of an overpayment and any interest due on it. It turns instead on how we have chosen to exercise our jurisdiction; in cases like this one, we have chosen to do so according to rule. When we exercise our jurisdiction under section 6512, we do it by deciding what was the "overpayment determined by the Court * * *." Rule 260. Rule 260, consistently with Rule 155, should lead us to the agreed decision of the parties, and their intended meaning of

its terms.  I recognize that this means that parties could define "overpayment" as an overpayment of tax in the context of settling cases, while construing "overpayment" in section 6512 to mean we have jurisdiction over both overpayments of tax and interest. But that sort of context-specific interpretation is recognized throughout the Code.  Section 6601(e) itself begins with "Except as otherwise provided in this title" and this phrase is a recognition by Congress that a complex tax code patched together at many different times for many different purposes should not be interpreted using something akin to a universal-search-and-replace function.[2]  Glossing is almost always necessary to decide the likeliest meaning of the Code, and the majority creates a gloss of its own by construing sections 6512(b) and 6402(a) to not apply to the very tax liabilities at issue in an overpayment case.

The third and final issue I wish to highlight is the majority's seeming indifference to the effects of today's decision on a large number of third parties.  As Judge Goeke points out, today's definition of "overpayment" threatens to bollix up the procedure for interest calculations by forcing

---

[2] The majority likewise relies on regulation Sec. 301.6611-1(b), Proced. & Admin. Regs., as additional support for its conclusion that "overpayment" must mean "the amount by which payments exceed the tax, including any underpayment interest." See majority op. pp. 18-19.  But that regulation defines overpayment for the purpose of computing interest, not drafting settlement documents.

parties to calculate interest before submitting their computations under Rule 155.  Resolution of especially complex cases where interest netting applies will become even harder to manage with any kind of reasonable speed.  Parties now engaged in Rule 155 computations will have to be very careful that today's opinion is reflected in their documents.  And we can expect litigants who have already settled their cases in the last 120 days (for Rule 260 motions) and the last year (for Rule 261 motions) to return to us seeking the same windfall that the Smith Estate gathers up today.

Because there is no reason to let this happen, I respectfully dissent.

HAINES, GOEKE, WHERRY, and KROUPA, <u>JJ</u>., agree with this dissenting opinion.