**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 26, 2009

Charles R. Fulbruge III
Clerk

No. 08-20705

JAMES ALLEN SMITH

Petitioner-Appellant

v.

UNITED STATES OF AMERICA

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before GARWOOD, OWEN, and SOUTHWICK, Circuit Judges.

GARWOOD, Circuit Judge:[*]

Plaintiff-appellant, James Allen Smith (Smith), in his capacity as the executor of the Estate of Algernine Allen Smith (Estate), filed this suit in August 2007 in the district court below against defendant-appellee, the United States of America (Government), seeking to recover $85,336.83 allegedly owed to the Estate as an estate tax overpayment refund pursuant to a decision of the United States Tax Court (Tax Court) issued on January 24, 2002. Both parties moved for summary judgment. The district court granted

---

[*]Pursuant to 5TH CIR. R.47.5 the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the Government's motion, denied Smith's motion, and dismissed the action with prejudice. Smith now appeals. For the following reasons, we affirm.

## FACTS AND PROCEEDINGS BELOW

This case is the offspring of *Estate of Smith v. Commissioner*, a complex tax case that generated three opinions by this court and five Tax Court opinions. 429 F.3d 533 (5th Cir. 2005); 54 F. App'x 413 (5th Cir. 2002); 198 F.3d 515 (5th Cir. 1999); 123 T.C. 15 (2004); 82 T.C.M. (CCH) 909 (2001); 115 T.C. 342 (2000); 110 T.C. 12 (1998); 108 T.C. 412 (1997). A basic familiarity with the history of *Estate of Smith v. Commissioner* is needed to understand the issue that is now before this court.

Algernine Allen Smith died on November 16, 1990, leaving behind a sizeable estate. At the time of her death, she was being sued by Exxon Corp. (Exxon) for $2.48 million. *Estate of Smith v. Comm'r* (*Estate of Smith I*), 198 F.3d 515 (5th Cir. 1999). In February 1991, before the Estate had filed its estate tax return, Exxon prevailed on a motion for summary judgment, and the Estate was found to be liable on Exxon's claims. *Id.* The Estate filed its estate tax return in July 1991, five months after summary judgment was granted, but before the Special Master had finished calculating the quantum of Exxon's claims. *Id.* In its estate tax return, the Estate deducted the entire $2.48 million claim. *Id.* As a result of this deduction, the Estate reported a tax liability of only $60,164.54. It paid this amount.

In March 1992, the Estate settled with Exxon for $681,840. *Id.* This led the Commissioner of Internal Revenue (Commissioner) to issue a notice of deficiency in 1994 for $663,785 in estate taxes and to assess an accuracy-related penalty of $132,785 against the Estate. The Estate filed a petition in the Tax Court challenging the deficiency and the accuracy-related penalty.

On February 18, 1998, the Tax Court held that there was a deficiency

2

in the estate tax of $564,429.87, but that no accuracy-related penalty was owed. *See Estate of Smith v. Comm'r* (*Smith Tax Court 2*), 110 T.C. 12 (1998); *Estate of Smith v. Comm'r* (*Smith Tax Court 1*), 108 T.C. 412 (1997). On March 31, 1998, the Estate remitted a payment of $646,325.76 to the Government. On May 12, 1998, the Commissioner assessed the estate tax deficiency as being $564,429.87, in accordance with the Tax Court's opinion. He also determined that the Estate owed underpayment interest of $410,848.76 as a result of this deficiency.

In 1992, the Estate had overpaid its income taxes, resulting in an overpayment credit of $63,052.00. The Commissioner applied this credit to the $564,429.87 deficiency and then allocated $501,377.87 of the Estate's March 31, 1998, payment to satisfy the rest of the deficiency.[1] The remaining $144,947.89 of the Estate's March 31 payment[2] was allocated to satisfy part of the $410,848.76 in underpayment interest that had been assessed on May 12.

The Estate appealed the Tax Court's ruling to this court. On December 15, 1999, we issued an opinion that reversed the Tax Court, vacated its judgment, and remanded the case with directions to recalculate the amount of the deduction to which the Estate had been entitled as a result of Exxon's claims. *Estate of Smith I*, 198 F.3d at 532.

On November 21, 2001, the Tax Court issued an order pursuant to our instructions that fixed the amount of the deduction in question. *Estate of Smith v. Comm'r* (*Smith Tax Court 4*), 82 T.C.M. (CCH) 909 (2001). The

---

[1] $564,429.87 – $63,052.00 – $501,377.87 = $0.00
(Deficiency – 1992 Credit – Portion of March 1998 Payment Allocated to Deficiency = $0.00)

[2] $646,325.76 – $501,377.87 = $144,947.89
(Full March 1998 Payment – Portion Allocated to Deficiency = Portion Allocated to Underpayment Interest)

3

Estate and the Commissioner then submitted an agreed "COMPUTATION STATEMENT UPON REMAND" (Computation) (R. 20.) pursuant to Tax Court Rule 155,[3] which the parties stated was in accordance with the Tax Court's November 2001 order. The Computation stated that the total estate tax liability of the Estate in 1991 had been $385,747.17 and that the Estate had made a total of $624,594.41 in tax payments. The $624,594.41 total for the Estate's tax payments was calculated by adding together the Estate's initial payment of $60,164.54, the 1992 income tax overpayment credit of $63,052.00, and the $501,377.87 portion of the Estate's March 1998 payment that had been allocated towards its estate tax liability. Based on these calculations, the Computation concluded that the Estate had overpaid its estate taxes by $238,847.24. The Computation also contained a detailed calculation for "Total Federal Interest Deduction," which was equal to $209,943.54, the agreed amount of underpayment interest owed by the Estate.

On January 24, 2002, the Tax Court entered a decision incorporating the Computation as its own findings and concluding that an overpayment of

---

[3] The version of Rule 155 in effect at the time read, in relevant part: "(a) Agreed Computations. Where the Court has filed or stated its opinion determining the issues in a case, it may withhold entry of its decision for the purpose of permitting the parties to submit computations pursuant to the Court's determination of the issues, showing the correct amount of the deficiency, liability, or overpayment to be entered as the decision. If the parties are in agreement as to the amount of the deficiency or overpayment to be entered as the decision pursuant to the findings and conclusions of the Court, then they, or either of them, shall file promptly with the Court an original and two copies of a computation showing the amount of the deficiency, liability, or overpayment and that there is no disagreement that the figures shown are in accordance with the findings and conclusions of the Court. In the case of an overpayment, the computation shall also include the amount and date of each payment made by the petitioner. The Court will then enter its decision." TAX CT. R. 155(a) (2002).

4

estate tax in the amount of $238,847.24 had occurred. The Estate appealed the decision to this court, and we affirmed on November 7, 2002. *See Estate of Smith v. Comm'r* (*Estate of Smith II*), 54 F. App'x 413 (5th Cir. 2002).

After the Tax Court's decision, the Commissioner adjusted the Estate's account, abating the estate tax owed by $238,847.24 and abating the amount of underpayment interest owed by $180,564.04. After these abatements, the Commissioner's account showed that the Estate had overpaid its estate taxes by $238,847.24,[4] but that it still owed $85,336.83[5] in underpayment interest. On May 13, 2002, the Commissioner offset the $238,847.24 tax overpayment owed to the Estate with the $85,336.83 of underpayment interest owed by the Estate and issued the Estate a refund for $153,510.41, plus interest.

In October 2003, the Commissioner realized that a mistake had been made with regard to the amount of the $180,564.04 underpayment interest abatement that had been made. The error was a result of the Commissioner having applied the 1992 income tax overpayment to the estate tax deficiency as of March 1996, instead of April 1993. Accordingly, on October 6, 2003, the Commissioner abated the underpayment interest on the account by an additional $20,341.20 and issued the Estate a refund of this amount, plus interest. This final adjustment made the total amount refunded[6] to the

---

[4] $564,429 – $63,052.00 – $501,377.87 – $238,847.24 = ($238,847.24)
(Deficiency Assessed in May 1998 – 1992 Credit – Portion of March 1998 Payment Allocated to Deficiency – Tax Abatement = $238,847.24 Overpayment of Estate Tax)

[5] $410,848.76 – $144,947.89 – $180,564.04 = $85,336.83
(Underpayment Interest Assessed in May 1998 – Portion of March 1998 Payment Allocated to Underpayment Interest – 2001 Interest Abatement = $85,336.83 Underpayment Interest Outstanding)

[6] The total amount refunded:
$153,510.41 + $20,341.20 = $173,851.61

Estate equal to the $173,851.59 difference[7] between the $769,542.30[8] that had been paid by the Estate and its $595,690.71[9] liability under the parties' agreed Computation.

The Estate viewed the Tax Court's ruling as having settled all amounts owed by both parties at an overpayment of $238,847.24 owed by the Government to the Estate. In other words, the Estate viewed the ruling as having destroyed any interest obligations the Estate might have owed by incorporating them into the final $238,847.24 number. Accordingly, the Estate moved to enforce the overpayment decision in the Tax Court under Internal Revenue Code § 6512(b)(1)[10] and Tax Court Rule 260,[11] demanding $85,336.83, the difference between $238,847.24 and the $153,510.41 the

---

[7] Neither of the parties nor the district court explains or makes any complaint concerning the $0.02 difference between the total amount refunded, $173,851.61, and the Computation's difference between what the Estate paid and what it owed, $173,851.59. We presume that it is due to rounding.

[8] $60,164.54 + $63,052.00 + $646,325.76 = $769,542.30.
1991 Estate Tax Payment + 1992 Credit + Full March 1998 Payment = $769,542.30.

[9] $385,747.17 + $209,943.54 = $595,690.71
Agreed Deficiency + Agreed Underpayment Interest = Agreed Amount of Estate's Liability

[10] Internal Revenue Code § 6512 concerns "Limitations in case of petition to Tax Court" and provides, in relevant part:
"(b) Overpayment determined by Tax Court.—
    (1) Jurisdiction to determine.—Except as provided by paragraph (3) and by section 7463, if the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year . . . , the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer." 26 U.S.C.A. § 6512 (2002) (emphasis omitted).

[11] Tax Court Rule 260 concerns the "Proceeding to Enforce Overpayment Determination." TAX CT. R. 260 (2002).

6

Estate had already been refunded.

The Tax Court granted this motion on July 13, 2004, in a divided opinion. *Estate of Smith v. Comm'r* (*Smith Tax Court 5*), 123 T.C. 15 (2004). A majority of the Tax Court agreed with the Estate that the $238,847.24 overpayment judgment rendered by the Tax Court had settled all disputes regarding the tax liability of the Estate. *Id.* at 27. The majority held that any calculation of an "overpayment" necessarily included underpayment interest. *Id.* at 25-27. It also held that, if the Commissioner had wished to deduct the unpaid interest which he had assessed, he should have included this deduction in the final "overpayment" number at which the parties arrived in their Computation and which the Tax Court subsequently adopted. *See id.* at 20-28. It was insufficient for the Commissioner to have attached to the Computation the "Total Federal Interest Deduction" calculation detailing the amount of underpayment interest owed, because the Computation had concluded that the amount of the overpayment was $238,847.24. *Id.* at 25-27. Because any "overpayment" already included underpayment interest under the Tax Court's reasoning, the Estate could not owe any additional interest, and there was nothing with which the Commissioner could have offset the judgment. *See id.*

The Commissioner appealed the decision in *Smith Tax Court 5* to this court, which vacated the Tax Court's judgment on October 31, 2005. *Estate of Smith v. Comm'r* (*Estate of Smith III*), 429 F.3d 533, 539 (5th Cir. 2005). We held that the Tax Court had lacked jurisdiction to order the Commissioner not to offset the refund by the amount of underpayment interest owed. *Id.* at 538. In order for the Tax Court to have jurisdiction to order the Commissioner to make a refund, the Commissioner had to have failed to issue

7

a refund within 120 days of a Tax Court decision that resulted in a refund being necessary. *Id*. (citing 26 U.S.C.A. § 6512(b)(2) (2002)). If underpayment interest had been included in the Tax Court's January 2002 judgment, then the Commissioner had failed to issue a refund in the full amount that was required, and the Tax Court had jurisdiction to order a refund. *See id*. If underpayment interest had not been included in the Tax Court's January 2002 judgment, then it was proper for the Commissioner to offset the amount refunded by any outstanding underpayment interest obligation that existed, and the Tax Court would not have had jurisdiction to order a refund. *See id*.

> "The Commissioner's and the Tax Court's differing views on jurisdiction are a product of their differing views regarding whether an overpayment judgment covers only overpayment of the estate tax or whether it resolves a taxpayer's total overpayment of both tax and underpayment interest. Based on our review of the . . . provisions relating to the Tax Court's jurisdiction, we conclude that the Tax Court erred in holding that an overpayment of tax always includes any underpayment interest due thereon." *Id*.

Later in our opinion, we went further: "Based on our review of the record . . . it is clear that the overpayment decision in this case did not decide the question of underpayment interest." *Id*. at 539. Therefore, we concluded that the Tax Court had lacked jurisdiction to order the Commissioner not to offset the Estate's refund by the amount of underpayment interest it owed. *Id*.

Smith responded by filing this action in August 2007, *Smith v. United States*, arguing that the Estate was entitled to $85,336.83, plus interest, pursuant to the Tax Court's order of January 24, 2002. After the Estate and the Government moved for summary judgment, the district court denied Smith's motion for summary judgment, granted the Government's cross-

8

motion, and dismissed the action with prejudice on September 24, 2008.  The district court reached its decision primarily on the basis of the fact that the Estate had not paid more in taxes than it owed.  Smith now appeals.

## DISCUSSION

The sole issue before this panel is whether or not the district court erred in granting the Government's cross-motion for summary judgment, denying Smith's motion for summary judgment, and dismissing Smith's suit. The resolution of this issue depends on whether or not the Commissioner was correct in offsetting the Estate's overpayment refund by the amount of its unpaid underpayment interest.

### I. Standard of Review

We review a district court's grant of summary judgment *de novo*. *Morris v. Equifax Info. Serv., LLC*, 457 F.3d 460, 464 (5th Cir. 2006). Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986).

### II. Analysis

The Computation fixed the Estate's estate tax liability at $385,747.17 and its underpayment interest obligation at $209,943.54, for a total of $595,690.71.  At the time of the Tax Court's January 2002 decision, the Estate had already paid the Government a total of $769,542.30.  Smith argues that this means the Estate had no outstanding tax liabilities, in either estate tax deficiency or underpayment interest, on January 24, 2002, when the Tax Court decision finding that there was an estate tax overpayment of $238,847.24 was issued.  He asserts that Internal Revenue Code Section

6402(a),[12] which empowers the Commissioner to offset a taxpayer's overpayment, can only be triggered if the taxpayer has an outstanding liability at the time the overpayment is determined. *See* 26 U.S.C.A. § 6402(a) (2002); *Northern States Power Co. v. United States*, 73 F.3d 764, 767 (8th Cir. 1996). Therefore, he concludes, because the Estate had no outstanding liabilities as of January 24, 2002, Section 6402(a) could not have been triggered, and no offset was proper. Since no offset was proper, Smith argues that the Commissioner should have tendered payment of the full $238,847.24 immediately, pursuant to Internal Revenue Code Section 7486.[13] *See* 26 U.S.C.A. § 7486 (2002). Because the Estate was only paid $153,510.41, plus interest, Smith argues that it is owed another $85,336.83. In his reply brief, he also disputes that the Commissioner's October 2003 abatement and payment of $20,341.20 can be applied to reduce the $85,336.83 allegedly owed to the Estate, because the $20,341.20 refund resulted from an overpayment of the Estate's income taxes, rather than its estate taxes.

As the district court reasoned, the problem with Smith's argument is that the figures contained in the Computation, which served as the basis for

[12] Section 6402(a) provides:
"General rule.—In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall . . . refund any balance to such person." 26 U.S.C.A. § 6402(a) (2002).

[13] Section 7486 provides:
"In cases where assessment or collection has not been stayed by the filing of a bond, then if the amount of the deficiency determined by the Tax Court is disallowed in whole or in part by the court of review, the amount so disallowed shall be credited or refunded to the taxpayer, without the making of claim therefor, or, if collection has not been made, shall be abated." 26 U.S.C.A. § 7486 (2002).

10

the Tax Court's January 2002 decision, clearly presumed that the estate tax overpayment of $238,847.24 would be offset by the amount of underpayment interest that the "Total Federal Interest Deduction" calculation indicated was outstanding. The math does not add up correctly otherwise. Smith admits that the Estate's total liability was calculated to be $595,690.71 and that the Estate had made payments totaling $769,542.30. The difference of those two numbers is an overpayment of $173,851.59, not the $238,847.24 he claims the Estate was owed.

The only way to reconcile the overpayment judgment of $238,847.24 with the actual overpayment amount of $173,851.59 is to subtract the unpaid underpayment interest calculated in the "Total Federal Interest Deduction" attachment from the $238,847.24 overpayment figure. In other words, the only way to make sense of the calculations in the parties' agreed Computation is if the $238,847.24 overpayment judgment issued by the Tax Court was only meant to settle the amount of estate tax that had been overpaid, not to settle the amount of underpayment interest owed as well. Any argument that the $238,847.24 overpayment judgment necessarily included underpayment interest has been foreclosed by the conclusion this court reached in *Estate of Smith III*. *See Estate of Smith III*, 429 F.3d at 538-39.

Because the Commissioner's internal accounting procedures initially allocated so much of the Estate's March 1998 payment to pay its estate tax deficiency, there was not enough left over to cover all of the underpayment interest that was owed. When the abatements were made in 2002, the Commissioner did not re-apportion the March 1998 payment between interest and principal, because doing so was unnecessary. There was no difference in the amount of money the Estate would receive if the estate tax overpayment were offset by an unsatisfied underpayment interest obligation and the

11

amount of money the Estate would receive if the Commissioner had re-apportioned the March 1998 payment so that enough money was allocated to underpayment interest to satisfy all of the Estate's obligations. Because the March 1998 payment was not reapportioned, the Estate had an outstanding obligation on underpayment interest that properly triggered an offset under Section 6402(a).

To state matters more succinctly, the problem with Smith's argument is that it is based on two contradictory premises: 1) that the Estate had no unpaid obligations on January 24, 2002, and 2) that the Estate had overpaid its taxes by $238,847.24. Either premise can be true standing alone. Premise 1 is true by itself in the sense that the Estate had paid the Government $173,851.59 more than the parties' Computation indicated it owed. Premise 2 is true by itself in the sense that the Tax Court decided in January 2002 that the Estate had overpaid its estate taxes by $238,847.24. However, the two premises cannot be true at the same time. If Premise 2 is true and there was an overpayment of $238,847.24 in estate taxes, then there must have been some outstanding obligation that remained unpaid, because the Estate's payments only exceeded the total amount agreed to be owed by $173,851.59. If Premise 1 is true, and the Estate had no unpaid obligations on January 24, 2002, then the overpayment should have been $173,851.59, the difference between the total amount owed and the total amount paid, and the $238,847.24 judgment of the Tax Court was incorrect.

Because these premises cannot be reconciled, one of them must be false. We believe that Premise 2 should be taken as true, because the parties themselves have agreed that the Computation's $238,847.24 figure was correct, and the Tax Court adopted the Computation as its own findings. Therefore, we find that Premise 1 is false. The Estate did have an unpaid

12

obligation on January 24, 2002, in the sense that so much of its March 1998 payment had been allocated to satisfying deficiency, that a portion of the underpayment interest it owed was left unpaid. The Computation resulted in an unpaid obligation and an overpayment at the same time, because of the way in which the money was allocated between interest and principal. There is nothing contradictory about this, given its context. Section 6402(a) was properly triggered by the outstanding interest obligation, and the commissioner was entitled to offset the judgment by the amount of the unpaid obligation.

We need not address Smith's argument, raised for the first time in his reply brief, that the Commissioner could not use his $20,341.20 October 2003 abatement of underpayment interest to reduce the amount of the overpayment owed to the Estate, because we do not consider points of error raised for the first time in a reply brief. *E.g.*, *Cox v. DeSoto County, Miss.*, 564 F.3d 745, 749 (5th Cir. 2009).[14]

## CONCLUSION

For the foregoing reasons, we hold that the Commissioner properly offset the Estate's overpayment refund by the amount of its outstanding underpayment interest. Therefore, the district court's grant of summary judgment to the Government dismissing Smith's claims with prejudice is

AFFIRMED.

---

[14] However, we note that, even had Smith raised this argument properly, it seems to be undercut by the language of Internal Revenue Code Section 6402, which governs the use of the Commissioner's power to offset. Section 6402(a) states that "any overpayment" may be credited against "any liability in respect of an internal revenue tax on the part of the person who made the overpayment." 26 U.S.C.A. § 6402(a) (2002). "[I]nternal revenue tax" is broad enough to encompass both estate taxes and income taxes. *See id*.